<hr/>

SOPHIA B. HASCALL, EXECUTRIX, ET AL. v. NANCY COX.

*Wills—Construction—" Heirs"—Distributive share.*

The word "heirs," though technical, and when used in legal instruments, more or less forcibly presumed to have its technical meaning, may also be understood, when used in common speech, or in wills, which are often informal instruments, to mean those who come in any manner to the ownership of any species of property by reason of the owner's death; and it may include a testator's wife, next of kin, and legatees, as well as those who take by descent.

Where the context determines the sense in which the word "heirs" is used in a will, effect must be given to the will accordingly.

A testator declared that all the residue of his estate, after all charges
were paid, should be divided among his legal heirs, according to the
laws of Michigan. His heirs-at-law would be identical with the dis-
tributees of his estate, and consisted of his wife, a brother, two sis-
ters, and the five children of a deceased sister, four of whom were
males. He also provided that these four nephews should receive a
certain farm "in full of all claims they might have as heirs." *Held*
that notwithstanding the use of the word "heirs," the residue should
be divided among the heirs-at-law, except the nephews, according to
the provisions of the Statute of Distributions; and that although the
nephews were provided for, the niece should not receive the full
share to which her mother would have been entitled, but only
what she would have received if her brothers had been included
among the distributees.

Error to Kalamazoo. Submitted Oct. 12. Decided Oct. 31.

APPEAL from allowance of the account of the executrix.
Contestant brings error. Affirmed.

*Edward H. Stewart* for appellant. The wife is not a legal
heir and should take nothing of the residue : *Bailey v.
Bailey* 25 Mich. 185 ; there is no intestate estate, as all,
including the residue, after the specific bequests, is disposed
of by will : *Toms v. Williams* 41 Mich. 552 ; the wife's
share of the residue, whatever it may be, being taken out,
whatever residuary estate remains is to be distributed
between the sisters, brother and niece, the sisters and brother
taking, *per capita*, in their own right, but the niece taking
*per stirpes*, as sole representative of her mother : 1 Wil-
liams on Executors 1623, 1604 ; 2 Bouvier's Inst. 371–2 ;
2 Kent's Com. §§ 424–5 : 4 id. §§ 389–392 ; 2 Redfield on
Wills 905, *b. c.* 15 ; 4 Kent Com. §§ 389, 391–2 ; *Daggett v.
Slack* 8 Metc. 450.

*Charles S. May* for appellees. The meaning of the word
"heirs" is always open to inquiry, and a question of
intention : *Bailey v. Patterson* 3 Rich. (S. C.) Eq. 156 ; *King
v. Beck* 15 Ohio 559 ; *Doe v. Jackman* 5 Ind. 283 ; *Collier v.
Collier* 3 Ohio St. 369 ; *Williamson v. Williamson* 18 B. Mon.
329 ; used in a will, to indicate succession to personal property,
it is equivalent to "next of kin," and includes those who

would take the estate under the Statute of Distribution : 2 Redf. Wills 64; *Wood's Appeal* 18 Penn. St. 478 ; *Greenwood v. Murray* 9 N. W. R. 630 ; *Eisman v. Poindexter* 52 Ind. 401; *Rusing v. Rusing* 25 Ind. 63 ; *Ferguson v. Stuart* 14 Ohio 140 ; *Brasher v. Marsh* 15 Ohio St. 103 ; *Clark v. Lynch* 46 Barb. 68 ; *Rand v. Sanger* 115 Mass. 128 ; *Chew's Appeal* 37 Penn. St. 23 ; *Henderson v. Henderson* 1 Jones N. C. L. 221 ; *Garrick v. Camden* 14 Ves. 385 ; *Withy v. Mangles* 10 Cl. & F. 215 ; devises to heirs or heirs-at-law are construed as to those only who are heirs at testator's decease and one who receives in representative capacity cannot receive more than his share if other heirs are living, even though they get nothing : *Doe v. Lawson* 3 East 278 ; *Bird v. Luckie* 8 Hare 301 ; *Bassett v. Granger* 100 Mass. 348 ; *Abbott v. Bradstreet* 3 Allen 587.

COOLEY, J. This is an appeal by Nancy Cox, one of the distributees under the will of Volney Hascall, from the allowance of the account of Sophia B. Hascall, executrix, and the final order of distribution.

The will of Volney Hascall bears date January 14, 1873, and is as follows :

"I, Volney Hascall, aged fifty-three years, of Kalamazoo in the State of Michigan, being of sound mind, make and declare this my last will and testament : *First.* I give and bequeath to my wife Sophie, our homestead in Kalamazoo, with all my pictures, books, furniture, musical instruments, and clothing ; also my house and lot in Centreville, St. Joseph county, in said State ; likewise $10,000 in cash and securities, as she shall elect. *Second.* I bequeath to my sister Caroline, if alive, two thousand dollars, payable within one year after my demise, in securities belonging to my estate. *Third.* I bequeath to Nancy, my niece, daughter of my sister Caroline, one thousand dollars in securities, payable within two years after my decease. *Fourth.* I bequeath Henry Sweetland, brother of my first wife, Louisa, one thousand dollars in cash or securities, as shall be most convenient, to be paid within two years after my decease. *Fifth.* I give and bequeath to Jerome and Fanny Wait, if alive, or if either be alive, the debt against the farm occupied by them on Gun Plains, due me on mortgage, if not

previously paid up. *Sixth.* I give to my half-brother, Leonidas, five hundred dollars, and to my half-sister, Levantia, a like amount, to be paid them in cash or securities, within three years after my demise, or sooner if convenient to the executrix. *Seventh.* I give to the Ladies' Library Association, if in existence, five hundred dollars, and the same sum to the Young Men's Library Association, if still existing, to be paid each in cash or securities within two years from my decease. *Eighth.* All the residue of my estate, after all charges are paid, to be divided among my legal heirs, according to the laws of Michigan. And lastly, I appoint my wife, Sophie, executrix of this, my last will and testament." [Signed and duly attested.]

Six years later he made the following codicil to his will:

" On this first day of February, 1879, I execute this codicil to my last will and testament, dated January 14, 1873, to add to and make some changes, as follows: *First.* I give and bequeath to my wife Sophia, five thousand dollars ($5000) in money or securities, or part of both, as she may prefer, in addition to the provision made further in my will, her rights as heir to remain good in all residuary property. *Second.* Also two thousand dollars ($2000) in money to my wife to procure mementos for friends not mentioned in my will, and to use otherwise as she knows would be pleasing to me. *Third.* Five hundred dollars ($500) to my sister-in-law, Mrs. Mary E. Brown, to be paid within a year after my decease. *Fourth.* I revoke the gift to the Young Men's Library Association, mentioned in my will. *Fifth.* I desire that my wife shall not be required to give bonds or security for the performance of her duty as executrix under the will or this instrument. *Sixth.* I will my farm in Trowbridge, Allegan county, to my nephew, Joel Warren; his brother Douglass to have an interest of one thousand dollars ($1000) in the farm, for which Joel is to secure him by mortgage, at a rate of interest agreed between them. *Seventh.* My farm in Barry county I will to my nephews, the four sons of D. Cahill, in full of all claims they might have as heirs under my will, each to share equally. *Eighth.* Five hundred dollars ($500) to Henry Sweetland as a partial compensation on my part for his support of father and mother."

[Signed and attested.]

The testator died February 21, 1879, and the will and codicil were duly probated, and letters testamentary issued to the widow. The testator left no children, and his heirs.

at-law and distributees were the widow, Caroline Warren and Levantia Rogers, Leonidas Hascall, his brother Leroy Cahill, Mortimer Cahill, Arad Cahill and Daniel Cahill, Jr., his nephews, and Nancy Cox, his niece. The Cahills and Nancy Cox are children of his deceased sister Cordelia. By the Statute of Distributions, if Hascall had died intestate, the widow, after some allowances not important to this discussion, would have been entitled to one-half the personalty, and the remainder would have been shared among the brother, sisters, nephews and niece, the nephews and niece receiving the portion that would have fallen to their mother if living.

In May, 1881, the executrix presented her final account for allowance, showing in her hands or accounted for $64,102.53. Nancy Cox appeared and contested the allowance, and after the account had been passed upon by the probate judge, appealed to the circuit court. The questions principally contested in that court concerned the shares respectively which the widow and the contestant were to have in the residue after the specific gifts had been satisfied. The circuit judge was of opinion that the widow was entitled to one-half such residue, and that Nancy Cox, the contestant, was entitled to share the other half with her uncle and aunts, in the proportion of one to five. Order was entered accordingly.

In making this order the circuit judge gave effect to the will as he understood it. The parties agreed that all the property was given by the will; that nothing was left to intestacy; and that the question involved was one of construction merely. The contestant insisted that the testator, by designating the objects of his bounty as his heirs, indicated his purpose that they should take as heirs; that is, that they should share in the property in the same proportion that they would have taken as heirs in inheritable estate. The executor on the other hand maintains that the word "heirs" is employed merely to designate who shall take, but that the intent that they shall take "according to the laws of Michigan" must be understood as meaning that the property shall be divided as the laws of Michigan would divide

the same kind of property; that is to say, as it would divide personal estate.

Similar questions to this have arisen many times, but it has not often been the case that whether one construction or the other was adopted the same persons would be the beneficiaries. In this case such is the fact. The widow, brother and sisters, nephews and niece of the testator are his heirs at law, under the statute of this State, and they would also have been the distributees of his personal estate if he had died intestate. But the widow's proportionate share under the Statute of Distributions would be greater than under the Statute of Descents, and she is therefore interested in maintaining that the Statute of Distributions was in the mind of the testator in making this disposition of the residue.

The fact that the testator made use of the word "heirs" in this clause is not very conclusive of his intent. Heirs is a technical word, and when it is made use of in any legal instrument, there is a presumption, more or less strong according to the circumstances, that it is employed in a technical sense. *De Beauvoir v. De Beauvoir* 3 H. L. Cas. 524. But in common speech the word is frequently used to indicate those who come in any manner to the ownership of any property by reason of the death of an owner, and may then include next of kin and legatees as well as those who take by descent. And in wills, which are often very informal instruments and drawn without legal assistance, the word is sometimes employed with quite as little regard to the technical sense. The context may determine the meaning, and when it does, effect must be given to the instrument accordingly.

Cases are numerous in which the word "heirs" in a will has been construed as designating the persons who should take as next of kin. In *Gittings v. M'Dermott* 2 M. & K. 69, the will gave to persons named "and their heirs" certain legacies. Three of the persons named died in the testator's life-time. It was held that the legacies did not lapse, but that they passed, not to the heirs of the persons

named, but to their next of kin respectively; and Sir John Leech in disposing of the case said: "The word 'heir' must, in respect of personal property, be taken to mean next of kin." Where, as in this case, the gift to the heirs is by way of substitution, the construction which implies that next of kin is intended generally prevails. *Vaux v. Henderson* 1 Jacob & W. 388 n.; *In re Newton's Trusts* L. R. 4 Eq. 171; *Re Gamboa's Trusts* 4 K. & J. 756; *Price v. Lockley* 6 Beav. 180; *Wingfield v. Wingfield* 9 Ch. Div. 658. But this construction is not limited to any particular class of cases; it is given in any case where the context seems to require it. In *Re Steevens' Trusts* L. R. 15 Eq. 110, a legacy of £500 "to the heirs of my late brother Joseph Steevens" was held to intend his next of kin, and that his children and widow if any would share it. In *Re Jeaffreson's Trusts* L. R. 2 Eq. 276, there was a gift of personalty to trustees for the benefit of "the heirs of the body of E. L., first to educate at their discretion the said heirs, and lastly to pay to the said heirs the said residue at their respective ages of twenty-one." By this it was held that the next of kin descended from E. L. was intended. Other cases are *Pattenden v. Hobson* 7 Jur. 406; *Re Porter's Trust* 4 K. & J. 188; *Parsons v. Parsons* L. R. 8 Eq. 260; *Finlason v. Tatlock* L. R. 9 Eq. 258; *Re Thompson's Trusts* 9 Ch. Div. 607. In *Furguson v. Stuart's Executors* 14 Ohio 140, the wife, who would be entitled as distributee, was held intended by a gift of money to the husband's "heirs." A similar conclusion was reached in *Eisman v. Poindexter* 52 Ind. 401, and also in the recent case of *Welsh v. Crater* 32 N. J. Eq. 177. And we have no doubt a like construction of this instrument is required to give effect to the intent.

The doubt respecting the proper share of Nancy Cox arises upon the seventh clause of the codicil. As she is one of the five children of the testator's sister Cordelia, she would, if the property were intestate, share equally with them in one-fourth of one-half of it. But her four brothers are given a farm, which is to be in full of "all claims" they might otherwise have; and this gift excludes them from

participation in the residue. Mrs. Cox claims that the effect of the exclusion is to make her the sole representative of her mother in the distribution of the residue, and to entitle her to take what all the five would otherwise have received. But there is nothing in the will that indicates a purpose to give the farm to the four brothers by way of increasing the share of Mrs. Cox, or of diminishing the shares of her uncles and aunts. The devise of the farm is made to satisfy the just claims of the devisees, and apparently for no other purpose. Their just claims, according to the standard prescribed by the testator himself, would have been measured by the Statute of Distributions, but for reasons which he does not explain, he saw fit to meet their claims with land instead of leaving them to take shares in the personalty. But with the exception that these four are excluded from sharing in the residue, the rule of distribution is not changed. It may be supposed that by the gift of the farm, what would otherwise be the residue is diminished to the extent of its value, but that, as there are fewer now to share in it, their respective shares will be substantially the same. Mrs. Cox, if her brothers were to share with her, would take one-fifth as much as her uncle and each of her aunts, and she will share the residue with them in the same proportion now that the brothers are excluded.

This is the view taken by the circuit judge, and his order in the premises will therefore be affirmed.

The other Justices concurred.