## JOHNSON V. KNIGHTS OF HONOR.

| 53 | 255 |
| 56 | 66 |

Decided May 10, 1890.

1.  *Who are "heirs" of personalty.*

Where there is no context to explain it, the word "heirs," when used in a
legal instrument to designate the persons to whom personalty devolves,
means those who, under the statute of distribution, would, in the event
of death and intestacy, be entitled to the personal estate of the person
of whom they are mentioned as heirs.

2.  *Heir—When wife is not.*

Where a benefit certificate was payable to the heirs of the intestate, who
died childless, a surviving wife will not take as heir, unless there be no
paternal or maternal kindred capable of inheriting.

3. *Mutual aid society—Constitutional limitation of beneficiaries—Waiver.*

    A provision in the constitution of a mutual aid society, limiting the beneficiaries in an insurance certificate to members of the family of the holder or those dependent on him, may be waived by the society, and cannot be availed of by a third person.

APPEAL from *Prairie* Circuit Court, Southern District.
M. T. SANDERS, Judge.

*U. M. & G. B. Rose* and *George Sibley* for appellant.

1. If the subsequent changes in the constitution of the order did not control the language of the certificate, still under the designation of *heirs*, the widow was entitled to one-half the amount.

The word *heirs* has a different signification when used in reference to real and personal property. When lands are in question, *heirs* mean those who would take at common law or by the statute of descents. When personalty is spoken of, it means those entitled under the statute of distribution. 7 Allen, 77; 1 Hoff., Chy., 202; 5 Vesey, 403; 4 Vesey, 649; 15 N. E. Rep., 919; 5 Moak (Eng.), R., 746; 26 Moak (Eng.), R., 417; 26 Moak (Eng.), R., 384; 5 Kan., 392; 1 Dev., Eq., 189; 1 Jones, Eq., 117; 2 Jones, Eq., 28; 1 Jones, Law, 221; 6 Beav., 266; 16 Beav., 560; 2 Kay & J., 729; 2 Jur., N. S., part 1, 344; 84 Pa. St., 241; 8 Lea, 569; 32 N. J. Eq., 180.

2. By the terms of the certificate, the loss is to be paid Johnson's heirs. Before his death the constitution was so changed as to make the benefit payable only to his family, or some one dependent on him for support. His family consisted of his wife, and no else was dependent on him. The subsequent amendment deprived the intervenors of no vested rights, for they had none. 4 Kent's Com., 336. The constitution may be altered, and beneficiaries changed as often as the association desires. 46 Vt., 362; 4 Hun, 339; 62 How.

Pr., 466; 71 Ala., 436; 8 S. W. Rep., 38; 60 Tex., 532; 92 Pa. St., 510.

Grown up brothers and sisters living apart from the decedent and not dependent on him are not part of his *family*. Winfield, Adj. Words and Phr. "Family;" Rap. & L. Dict., "Family;" Bouvier, L. D., "Family;" 142 Mass., 224.

The laws of Missouri, the domicile of the association, prohibit payment to any but members of the family, or those dependent on him, and a contract to pay his heirs, generally, would be void as *ultra vires*, and the benefit would go to such as are entitled under the charter and laws of the order.     12 N. E. Rep., 407. See also 7 N. W. Rep., 273; Hirschl on Fraternities, 23.

*J. E. Gatewood* for appellees.

1. If the designation of "his heirs" was not a valid naming of persons as beneficiaries, then the policy lapses, and no one can take. The certificate was never changed by Johnson during his life, nor indicated any desire to do so, except to his child, and after the child's death he expressed a determination not to change the beneficiary.

The meaning of the word *heirs* is definitely settled by our statutes. The estate, real and personal, descends to the *kindred, male and female, subject to the widow's dower*— clearly not recognizing the widow as kindred. Mansf. Dig., sec. 2522, subd. 1, 2 and 3, and secs. 2523-4-5. The wife can only be made heir by declaration in writing. Mansf. Dig., secs. 2344, 2345.

The only case in which a widow can inherit is under sec. 2528, where there is a total failure of kindred. See also secs. 2603-4-5. Heir means child or descendant.     23 Ark., 378; 22 Ark., 567; those who would inherit should one die intestate. 5 Ark., 608; *Kelly v. McGuire*, 15 Ark., 555.

A widow can only take when it was the property of her

deceased husband's estate, and then only as *dower*. Sec. 2593, Mansf. Dig.

A widow can never take *as heir*, but only as widow. If no person is designated to take the benefit, it lapses, or must be covered into the widow's and orphan's fund, or must be collected by Johnson's administrator. 3 Tenn. Chy., 108.

2. The lodge alone can complain of Johnson's want of obedience to the laws of the order. Having acquiesced in his holding the original certificate, they are now estopped to require him to change it. Niblack, Ben. Soc., sec. 7; Brice, Ultra Vires, 729; 96 U. S., 258; 96 U. S., 351; 120 Ill., 121. See also 102 Ind., 262; 104 Ind., 133; 20 Wall., 245; 121 U. S., 186. The change made in the constitution was inoperative as to Johnson. Niblack, p. 253, sec. 221. The power of appointment may be exercised at any time during the contract. Niblack, sec. 217. It requires some *affirmative* act on the part of a member to change the beneficiary. Niblack, sec. 222. The change must be made in the manner prescribed by the order. Niblack, sec. 221; 2 Dem. (N. Y.), 409; Niblack, sec. 223; 18 Mo. App., 189; 111 Ind., 12; Niblack, secs. 224-5; 6 N. Y., 851; 28 Mo., 28; Niblack, secs. 189, 184 and 272.

The lodge alone is the only person who can raise the question as to who is the proper beneficiary. They have paid it into court and thus waived that question. Cases *supra;* 12 S. W. Rep., 477.

The contract must be determined by the law as it stood when the contract was made. 25 Ark., 625; 12 Ark., 321; 3 Ark., 285.

Appellees are the only *heirs* and as such are entitled to the fund.

BATTLE, J. On the 4th day of September, 1883, the Supreme Lodge of the Knights of Honor issued to James W. Johnson, a member of DeVall's Bluff Lodge, No. 2172, a lo-

cal lodge of the Knights of Honor, located at DeVall's Bluff in this State, a benefit certificate for the sum of two thousand dollars payable to his heirs at his death.   At that time Johnson was unmarried, and the constitution of the supreme lodge authorized the issuing of a benefit certificate, payable, on the death of a member, to his family or as he might direct.   In 1884 the constitution was changed, so as to authorize the issuing of a certificate to a member payable "to some member or members of his family, or person or persons dependent on him, as he may direct or designate by name to be paid as provided by general law."   After this, on the 7th of December, 1884, James W. Johnson and Laura A. Johnson, the plaintiff in this action, married, and on the 27th of February, 1886, a child was born to them, who died on the 10th of August of the same year.   On the 24th of November following, James W. Johnson died without descendants, leaving Laura A., his widow, and S. W. Pate and O. T. Carr, sisters of the whole blood, and George W. Price and Salvina T. Hurt, half sister and brother, his nearest kindred, surviving him.   The beneficiaries named in the certificate of the 4th of September, 1883, were never changed.   The supreme lodge has paid the $2,000 into court, and the sisters and half sister and brother, defendants in this action, claiming to be the heirs of Johnson, and Laura A., litigate its disposition.

The first question presented for our consideration is, who are meant by the word "heirs" in the certificate in controversy?   It is a technical word.   When used in any legal instrument, and there is no context to explain it, as in this case, it should be understood in its legal and technical sense. *Moody v. Walker*, 3 Ark., 147; *Myar v. Snow*, 49 Ark., 129; *Hascall v. Cox*, 49 Mich., 440; *Mounsey v. Blamire*, 4 Russ., 384; *De Beauvoir v. De Beauvoir*, 3 House of Lords Cas., 553, 557; *Doody v. Higgins*, 2 Kay & J., 729; *Holloway v. Holloway*, 5 Ves., Jr., 401.   At law it was used to designate the persons on whom an inheritance in real estate

1. Who are "heirs" of personalty.

was cast by the law on the death of the ancestor. Originally
it could not be used to designate those on whom the goods
or chattel property were cast, because the law cast them upon
no one. No one "was appointed by law to succeed to the
deceased ancestor; on his death, they became *bona vacantia*,
and were seized by the king on that account, and by him,
as grand almoner, applied to pious uses, now considered
superstitious, for the good of the souls of their former owner."
But since the enactment of statutes of distribution, it has often
been used in gifts and bequests of personal property to desig-
nate the donee or legatee. As to its meaning when used in
this connection, courts are not in harmony, and there is much
confusion and conflict in the decisions. No useful purpose
can be served by a review of the cases upon the question in
this opinion. Suffice it to say, that the weight of authority
holds, that the word "heirs," when used in any instrument
to designate the persons to whom personal property is thereby
transferred, given or bequeathed, and the context does not
explain it, means those who would, under the statute of dis-
tribution, be entitled to the personal estate of the persons of
whom they are mentioned as heirs in the event of death and
intestacy. *Doody v. Higgins*, 2 Kay & J., 729; *Gittings v.
McDermott*, 2 Mylne & Keen, 69; *Wingfield v. Wingfield*,
26 Moak., 422; *Sweet v. Dutton*, 109 Mass., 590; *Wright
v. Trustees etc.*, 1 Hoff. Ch., 211, 213; *McCabe v. Spruil*,
1 Dev. Eq., 190; *Evans v. Salt*, 6 Beav., 266; *Jacobs v.
Jacobs*, 16 Beav., 557, 560; *White v. Stanfield*, 15 N. E.
Rep. (Mass.), 924, 925; *Low v. Smith*, 2 Jur., N. S., part.
1, 344; *Houghton v. Kendall*, 7 Allen, 77; 2 Jurist, N. S.,
part 2, 211; *Crooms v. Herring*, 4 Hawks, 393; *Eddings v.
Long*, 10 Ala., 203; *Rawson v. Rawson*, 52 Ill., 62; *Rich-
ards v. Miller*, 62 Ill., 423; *Hascall v. Cox*, 49 Mich., 440,
441; see *Tillman v. Davis*, 95 N. Y., 17.

In many States where the widow is entitled to take under
the statute of distribution, she is held to be an heir of her de-

ceased husband as to his personal estate.   But it is different in this State.   Section 2522 of Mansfield's Digest provides: "When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner: *First*. To children, or their descendants, in equal parts; *Second*. If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts," etc.   The statutes provide that relations of the half blood shall inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate through an ancestor.   In only one event does the widow take as an heir or distributee of her deceased husband, and that is when he died intestate and leaves no children, or their descendants, father, mother, nor their descendants, or any paternal or maternal kindred capable of inheriting.   Our statutes virtually declare that she shall not take the real or personal property of her deceased husband, as heir, in any other event, if then.   Mansf. Dig., sec. 2528.   It is true that section 2592 of Mansfield's Digest provides:   "If a husband die, leaving a widow and no children, such widow shall be endowed of one-half of the real estate of which such husband died seized and one-half of the personal estate, absolutely and in her own right."   But she takes the one-half of the personal estate as dower, absolutely and independently of creditors and not as a distributive share.

In *Hill's Administrators v. Mitchell*, 5 Ark., 618, this court said:   "Distribution and dower are two separate and distinct things: one is a lien created by law on the property of the husband at the time of the marriage, which necessarily takes precedence over all other subsequent accruing rights,

and attaches to the specific property and is carved out of it. Distribution occurs after administration, and the payment of debts; and the estate is then divided between the heirs or legatees. The widow is not entitled to any portion or distributive share after her dower has been allotted, for all that goes to the heirs or legatees after payment of debts, and the administrator is bound to distribute the residue in his hands. We have no statute giving her any portion of the personal estate as a distributive share; and that part of the common law which is in force here allows her no such interest in the personal effects of her husband.''

In Illinois a statute was enacted which provides: ''When there is a widow or a surviving husband, and also a child or children, or descendants of such child or children of the intestate, the widow or surviving husband shall receive, as his or her absolute personal estate, one-third of all the personal estate of the intestate.'' In *Gauch v. St. Louis M. L. Ins. Co.*, 88 Ill., 251, the court held that this statute was not intended to and did not make the widow an heir of her intestate husband, but defined what shall be taken as dower; and held that a policy of life insurance, payable to the ''legal heirs'' of the person whose life was insured, was payable to his children, if he left any, and that his widow was not included in the words ''legal heirs.''

3. Mutual aid society— Constitutional limitation of beneficiaries —Waiver. We do not think that Laura A. was an heir of her husband or included in the word ''heirs'' in the certificate in controversy. But it is contended that the brother and sisters of Johnson are entitled to no part of the $2,000, because the constitution of the supreme lodge of 1884 limits the right of a member of any lodge of the Knights of Honor to name beneficiaries in a certificate issued to him to the members of his family, or those dependent on him, and they belong to neither of these classes. But this question can be raised by no one except the supreme lodge, and it does not. By paying the money into court, it has expressed its willing-

ness to have it paid to Johnson's heirs. The money forms no part of his estate. The widow has no interest in it. The constitution of the supreme lodge of 1884 provides: "In the event of the death of all the beneficiaries designated by the member before the decease of such member, if he shall make no other disposition thereof, the benefit shall be paid to the heirs of the deceased member." The child having died before its father, Johnson left his brother and sisters his only heirs. As the supreme lodge by its certificate promised to pay them the $2,000, and does not object to paying, and no other person can lawfully, they are entitled to a judgment that it be paid to them.

Judgment affirmed.