## Staunton.

HENRY T. COLE, ET ALS. V. KAZIM TEMPLE BENEFIT
ASSOCIATION AND MRS. EDWARD M. CABELL.

September 12, 1930.

Absent, Holt and Gregory, JJ.

*Caldwell, Chaney & Loyd*, for the plaintiffs in error.

*J. P. Saul, Jr.*, and *Horace M. Fox*, for the defendants in error.

BROWNING, J., delivered the opinion of the court.

This is a suit by notice of motion for judgment in the Court of Law and Chancery of the city of Roanoke, Virginia, in which the plaintiffs in error were plaintiffs and the defendants in error were defendants. The parties will sometimes be designated herein as they were related in the trial court.

The facts out of which the action grew, as briefly told as may be, are as follows: The members of the Kazim Temple of the Ancient Arabic Order, Nobles of the Mystic Shrine, of Roanoke, formed in 1917 a voluntary assessment association for the purpose of paying death benefits to those of its members who might elect to join such association. The source of the benefit fund was the assessment of each member of the association a certain sum upon the death of any member thereof, the said sum being one dollar and ten cents per member, one dollar thereof, per member, to be paid to the beneficiary of any member dying. The total membership determined the amount going to such beneficiary, but in no case could it exceed two thousand dollars.

Certificates of membership were issued to each member and the association was controlled by certain by-laws, designating, among other things, what persons or classes of persons were permitted to be named as beneficiary, how such beneficiary could be changed after the issuance of the certificate, and who should become entitled to the fund, in event the named beneficiary should predecease the certificate holder, upon his death without having designated another beneficiary.

One, A. Ward Morris, was a certificate holder at the time of his death, and had been for some years prior thereto, being a member of Kazim Temple and of the said association. He died in January, 1929. In his certificate of membership his wife was designated as beneficiary but she died some three years before his death. Many years before, he married a widow, who at the time had one child, a daughter sixteen years old, who is now Mrs. Edward M. Cabell (one of the defendants in the court below and an appellee here). Morris and his wife and stepchild, now Mrs. Cabell, lived together at Waynesboro, Virginia, for a number of years. He was a civil engineer by profession and a man of culture and attainments, but unhappily became addicted to the excessive use of liquor which about destroyed his usefulness

to himself and family. His wife was sick a portion of the time and the onerous burden of caring for him fell upon the stepchild. Upon one of his drunken debauches she went with him to Richmond, Va., to have him treated at a Keely Institute. He would not go without her, although an Episcopal rector then, now Bishop Robert C. Jett, offered to take him. This stepchild raised the money to pay the expenses incident to his treatment at the Keely Institute. At other times when Morris was without employment she baked pies and sold them and took in sewing to pay the house rent. Her tender care of her stepfather continued to the day of his death.

For nearly three years before his death he was what was called a "resident" of the Elks National Home at Bedford, Virginia, where he died. On October 21, 1926, soon after he became a resident of the Home, he had a fall, from the effects of which he seemed never to have fully recovered. On October 30, 1926, he executed his will, which is as follows:

"Saturday, October 30, 1926.
"Bedford, Virginia.

"Being of sound mind, I make this my last will and testament, to wit: Any funds I may have on deposit in the First National Exchange Bank of Roanoke, Va., or other banks, to go to my first cousin, Harry Tulhill Cole, now residing in the Hotel Imperial, 32nd Street and Broadway, New York City, after all my just debts are defrayed, from such funds, at the time of my death, together with such toilet articles, masonic emblems, jewelry, clothes, satchels, trunks, etc., I may have at the time of my death. Also, such amount due me, independent of the foregoing, from the Kazim Temple Benefit Fund Association of Virginia, to go to and be given to Mrs. Edward M. Cabell, my deceased wife's daughter, now residing in Waynesboro, Va. I would request Mr. H. E. Dyer and A. F. Rawson, of

Roanoke, Va., to see the foregoing to be carried out as set forth, in the event of my death—this to take the place of any preceeding will.

"In testimony of which, I herewith affix my signature.

"AARON WARD MORRIS."

At the time of his death Morris had no immediate family of his own blood. His nearest of kin were Henry T. Cole, of New York, and George P. Morris, of Rhode Island, first cousins, and Edmund Cole Granville, of Massachusetts, a second cousin, all of whom were plaintiffs in the trial court, appellants here. They were men of middle age except the first mentioned, who was thirty and more. They had seen little or nothing of their kinsman, Morris. The said Cole came to Virginia in 1923 for this purpose, which was the last time he had seen him. There was some irregular correspondence between Morris and Cole. They contributed nothing to the support or comfort of Morris and were not present at his funeral services which were held in Roanoke. The interment was in New York State in the Morris family vault. The above will was admitted to probate in the Hustings Court of the city of Roanoke on January 21, 1929, and H. E. Dyer and A. F. Rawson qualified as administrators d. b. n. c. t. a. of the estate of the said A. Ward Morris, deceased, and the aforesaid Benefit Fund Association paid to them as such administrators the sum of two thousand dollars, which Morris had directed by his will to be paid to Mrs. Edward M. Cabell, and therein requested the said Dyer and Rawson to see that such directions were carried out. After the fund was paid to the administrators, demand was made upon them for it by the appellants and by Mrs. Cabell, which conflict of claims brought about the present litigation. The plaintiffs filed their notice of motion for judgment, the administrators filed their answer which they asked to be treated as an interpleader and requested

that they be allowed to pay the fund into court and have its direction as to its disposal, the association filed its answer denying the validity of the demands of either of the claimants and making a faint contention that the fund should be paid back to itself because under its by-laws neither claimant could be beneficiaries and that the will of A. Ward Morris was not a compliance with said by-laws as to changing the beneficiary in the membership certificate by its designation of Mrs. Edward M. Cabell as the person to receive said fund, and Mrs. Cabell filed her original and an amended answer setting forth her contentions. The judgment of the court upon the pleadings, exhibits and testimony was in favor of the defendant, Mrs. Edward M. Cabell, and by its decree directed the clerk of the court, in whose custody the fund then was, to pay to her the said fund, less the taxable costs of the interpleader aforesaid.

With the judgment of the trial court we are in entire accord.

The articles of the by-laws of the association relied upon by the appellants were numbered 5, 6, 7 and 9, and involved the topics we have referred to and need not be quoted in full here because we are in agreement with the court that their provisions and requirements were waived by the Association when it paid over the fund to the administrators, with the will annexed, of A. Ward Morris, deceased.

It was paid to the administrators by Mr. A. F. Rawson, who was treasurer of the association and a member of its executive committee, which, under the by-laws, had the active management of its affairs. The association, at the time, had knowledge of the fact that Mr. Morris had named his wife as his beneficiary and that she had died before he did; that Morris had, in his will, named his stepdaughter as his beneficiary, but in so doing he had not complied with the requirements of the by-laws, in that he had named one as to whom there was question as to whether she was

in the permitted class, and also that he had ignored the provision as to the particular manner in which the designation should be made. The following authorities are conclusive as to whether such provisions can be waived:

"It is insisted that the certificate issued to McNeil by the order was invalid, for the reason that the application for a change of beneficiary was not filed in the grand lodge within thirty days of its date, and thus was not filed in compliance with the provisions of the constitutions of the order. A sufficient answer to such contention by the intervenor is that this provision of the law was one that could be waived by the order, and when the order issued the certificate upon the application, the provision was waived." *Adams* v. *Grand Lodge*, 105 Cal. 321, 38 Pac. 914, 915, 45 A. S. R. p. 49.

"An officer of a mutual benefit association who is its executive head, keeping its records, holding its funds in trust, and paying out the same on approval, had power to bind the association by waiving a forfeiture provided for in its by-laws." *Moon* v. *Order of Railway Conductors*, 90 Iowa 721, 57 N. W. 623.

"A provision in the constitution of a mutual aid society, limiting the beneficiaries in an insurance certificate to members of the family of the holder or those dependent upon him, may be waived by the society and cannot be questioned by third persons." *Johnson* v. *Knights of Honor*, 53 Ark. 255, 13 S. W. 794, 8 L. R. A. 732.

■ ■ "A mutual benefit association may waive formalities required by its charter to be complied with in changing beneficiaries." *Manning* v. *Ancient Order of United Workmen*, 86 Ky. 136, 5 S. W. 385, 9 Am. St. Rep. 270.

Morris had lived in Roanoke for some years prior to his entering the Elks Home at Bedford, Va., in 1926. He made his will in October of that year just after a serious accident. The evidence does not disclose that he ever returned to

Roanoke, nor does it show where the insurance certificate was kept or found after his death. It is also not in evidence that he ever saw Mr. Rawson after going to Bedford City. He kept a bank account in Roanoke and dealt with persons connected with one of the banks. If his certificate was kept in a safe deposit box or in some other place of safe-keeping in Roanoke, then in making the designation by will he did about all he could, conveniently, do in an effort to change the beneficiary. At any rate he wanted Mrs. Cabell to have this money and we think that she is entitled to it, not as passing under the will as a legacy or bequest but by virtue of her appointment by the will to take, the association having waived compliance with its by-laws as to the requirements of their provisions.

"There are circumstances, however, in which the proceeds of the certificate ought, in good conscience, to go to the person designated in the will, and a court of equity will direct the same in that course." *Order of Mutual Companions* v. *Griest*, 76 Cal. 494, 18 Pac. 652; *Daniels* v. *Pratt*, 143 Mass. 216, 10 N. E. 166.

The setting of this case and the facts herein detailed, fully supported by the evidence, afford abundant warrant for the assertion that in good conscience the fund ought to go to the person designated in this will.

The judgment of the trial court is affirmed.

*Affirmed.*

## Richmond

November 20, 1930.

## UPON PETITION FOR REHEARING.

PER CURIAM.

The opinion of this court in the above entitled case was handed down on September 9, 1930, and we are asked, upon

petition of the appellants, to rehear the same and enter judgment for petitioners.

The opinion and judgment of this court, complained of, is attacked as having held that a mutual benefit association can, after the death of an insured, waive the rights of a beneficiary whose rights have become vested upon the death of the insured.

This assumes that the appellants had vested rights in the fund in question, to which proposition we do not assent. They do not come within the permitted class of beneficiaries under Articles VI and IX of the by-laws of the association and under the facts of this case; nor could such fund pass to them as distributees of the estate of the deceased, for the reason that it was not under the policy and by-laws of the association payable, in any event, to the estate of the insured, but only to some beneficiary falling within the class designated in the by-laws.

We adhere to our former decision and deny the petition for rehearing.

*Refused.*