339 Mich. 15 (1954)
62 N.W.2d 606
In re ECCLESTONE'S ESTATE.
COLOMBO
v.
ECCLESTONE.
Docket No. 41, Calendar No. 45,920.
Supreme Court of Michigan.
Decided February 18, 1954.
*17 Colombo, Colombo & Colombo, for executors and trustees.
Garan, Lucow & Miller, for Francis T. McGann, guardian ad litem for son.
Miller, Canfield, Paddock & Stone, for petitioner William B. Eccleston.
SHARPE, J. (dissenting).
This is an appeal from the circuit court of Wayne county construing the will of Edwin Clifford Ecclestone, deceased. Edwin Clifford Ecclestone, in his lifetime, owned all but 343 shares of the 65,000 shares of stock of the Ecclestone Chemical Company, Incorporated. Mrs. Ecclestone died a year prior to the making of the will in question. Mr. and Mrs. Ecclestone had only one child, a son, Eugene Clark Ecclestone, 50 years of age at the time the will was made. The son for many years had been afflicted with a disease, and shortly before the will was made was confined to Wayne County General Hospital as a mentally incompetent person. At the time of the execution of the will, Edwin Clifford Ecclestone had 1 sister and 1 brother living and a number of nephews and nieces of deceased brothers and sisters. The will was executed January 18, 1945, and Edwin Clifford Ecclestone died May 9, 1946. The will provided that Timothy E. Leland, William A. Johnson and Emil William Colombo be executors of his estate. The will also provided:
*18 "4. I direct my executors to provide for the support and maintenance of my son, Eugene Clark Ecclestone, in such amount as they may deem advisable, but not to exceed $300 per month.
"5. I direct my executors to continue the operation of my business, The Ecclestone Chemical Company, Inc., for a period of 5 years from the date of my death, at which time I direct them to sell said business and all the real and personal property in my estate and convert the same into cash, and then to distribute the cash to my heirs-at-law who may be living at the time of my death, said distribution to be made in accordance with the laws of the State of Michigan on descent and distribution of property. In the event of the death of my brother or sisters, then I direct that the share that would have gone to such brother or sisters shall go to his or her children."
The will was admitted to probate on August 13, 1946. Prior to the expiration of the 5-year period, the executors filed a petition with the probate court asking authority to continue the operation of the company until the further order of the court. On May 22, 1951, the probate court issued an order granting the relief asked for in the petition. On May 21, 1951, the nephews and nieces filed a petition in the probate court for a construction of the will and requested:
"That this court construe the will of the decedent and determine one of the two following propositions:
"(a) Either that the testator intended to, and in fact did by his will provide a testamentary trust under which his son, Eugene Clark Ecclestone, is to be the beneficiary of the income, and upon the death of said son all the rest, residue and remainder of the trust estate be sent over to the children of the testator's brothers and sisters per stirpes; or
"(b) That all the rest, residue and remainder of the estate of the decedent is now vested in such nieces *19 and nephews, subject, only to the life estate in the income in the son of testator, Eugene Clark Ecclestone."
The executors filed their objection to the petition, which contained the following:
"1. Because by the provisions of the will of Edwin Clifford Ecclestone, deceased, his estate, on his death, became vested in his son, Eugene Ecclestone, his only heir-at-law.
"2. Because the said William B. Ecclestone has no interest in said estate, and is without authority to file a petition for the construction of the will."
It also appears that the probate court appointed a guardian ad litem for Eugene Clark Ecclestone, a mentally incompetent person. He filed his report on July 10, 1951, and contended that Eugene Clark Ecclestone was the only heir-at-law of testator and became vested with the entire estate upon the death of testator.
A hearing was had on the petition, and the probate court entered an order holding that Eugene Clark Ecclestone became vested with the entire estate upon the death of his father. On January 28, 1952, petitioners filed an appeal to the circuit court. On April 23, 1953, the trial judge reversed the order of the probate court and held that the son had only a life estate, and that the petitioners became vested with the estate upon the death of the testator. Separate claims of appeal were filed on behalf of the executors and trustees and on behalf of the guardian ad litem. The executors and trustees, in their appeal, contend:
"1. Because the circuit judge erred in reversing the order of the probate judge, who held that under the provisions of the will of the testator and the laws of the State of Michigan on descent and distribution of property, Eugene Ecclestone was the son and only heir-at-law of his father, Edwin Clifford Ecclestone, *20 at the time of testator's death, and, therefore, became vested with the entire estate of testator.
"2. Because the circuit judge erred in finding that the son, Eugene Ecclestone, had only a life estate, and that the nephews and nieces of testator became vested with the entire estate at the death of testator.
"3. Because the circuit judge erred in finding that the executors, over a period of years, indicated their belief that testator's son had acquired only a life estate.
"4. Because the circuit judge, in holding that the nephews and nieces of the testator were his heirs-at-law at the time of his death, ignored the plain provisions of the statutes of the State of Michigan on descent and distribution of property, and, thereby, attempted, by judicial order, to amend and add to such statutes, being CL 1948, § 702.80 (Stat Ann 1943 Rev § 27.3178 [150]) and CL 1948, § 702.93 (Stat Ann 1943 Rev § 27.3178 [163]).
"5. Because the circuit judge, in effect, rewrote the last will of testator, contrary to its plain provisions and the statutes of the State of Michigan on descent and distribution of property.
"6. Because the circuit judge erred in holding that the will was ambiguous, and in admitting oral testimony of the witnesses, Cox and Leland, over objection, and also erred in refusing to strike such testimony from the record on motion at the close of the proofs."
Throughout the years certain well-defined principles have guided our Court in the construction of wills, among which are that a will should be construed so as to distribute testator's estate most nearly in accordance with the statutes of descent and distribution of property, see Gardner v. City National Bank & Trust Company, 267 Mich 270; that the policy of our statute is in favor of a vested, rather than contingent or postponed, estate, see In re Shumway's Estate, 194 Mich 245 (LRA1918A, 578); that the fundamental principle governing the construction *21 of wills is to give effect to the intention of testator, see In re Churchill's Estate, 230 Mich 148; that parol evidence is inadmissible if the will is unambiguous, see In re Blodgett's Estate, 197 Mich 455; that where there is an ambiguity in the will and intent cannot be determined from within its four corners, the surrounding circumstances can be considered, see In re Stuart's Estate, 274 Mich 282; that if there is a patent or latent ambiguity in the will, parol evidence is admissible, see Burke v. Central Trust Company, 258 Mich 588; that the wisdom of the testator in disposing of his estate is not for the courts if the provisions of the will are within the requirements and limitations of the law, see Hay v. Hay, 317 Mich 370, and it is not the province of a court to substitute its judgment for that of the testator or correct a seeming injustice in a will contest, see In re Kramer's Estate, 324 Mich 626.
Under part 4 of the will the executors are required to provide for the support and maintenance of Eugene Clark Ecclestone in an amount not to exceed $300 per month. It should be noted that there is no time limit for such support and maintenance or provision for a trust fund to continue the payment of the monthly allotment for the support of his son, except as it may be governed by part 5 of the will.
Part 5 directs the executors to continue the business for a period of 5 years from the date of his death, then sell the business and convert the proceeds into cash and to distribute the cash to his heirs who may be living at the time of the death of deceased, said distribution to be made in accordance with the laws of the State of Michigan on descent and distribution of property. Defendants urge that the following in part 5 of the will 
"5. * * * and then to distribute the cash to my heirs-at-law who may be living at the time of my death, said distribution to be made in accordance *22 with the laws of the State of Michigan on descent and distribution of property. In the event of the death of my brother or sisters, then I direct that the share that would have gone to such brother or sisters shall go to his or her children."
gives rise to a patent ambiguity for the reason that testator did not clearly define the limitation of the estate for his son. We are not in accord with this theory, as testator clearly provided for the maintenance of his son for a period of not to exceed 5 years, and then converting his assets to cash and distributing the same to his heirs-at-law.
It is also urged that the use of the words heirs-at-law shows a patent ambiguity. In Fisher v. West Virginia Gas Corporation, 127 W Va 645 (34 SE2d 123), it was held that the singular and plural of the word heir, when used in a will, are interchangeable.
It is also urged that the will is patently ambiguous because testator created a 5-year trust for his son at the same time giving the son the entire fee interest in the estate after the 5-year period. We find no patent ambiguity in the desire of testator to postpone the enjoyment of the entire estate for a limited period of time and give to the beneficiary a trust income until such time expires.
Defendants also urge that the will contains a latent ambiguity for the reason that testator's son, at the time of the execution of the will and prior thereto, was a hopeless physical and mental invalid; that testator was an intelligent business man with an acute awareness of the value of property, and under such circumstances it is unreasonable to suppose that testator intended to leave his property to his imbecile son. Under the statute of descent and distribution, the son became the sole heir of testator upon the death of testator. In Rand v. Butler, 48 Conn 293 (13 ALR 622), it was held that mental incompetency was not a sufficient *23 reason to exclude an heir. In our opinion mental incompetency, not being sufficient to disinherit an heir, does not of itself create a latent ambiguity. We hold that there is no latent ambiguity in the will. It follows that the trial court was in error in admitting the testimony of Wilfrid Cox, a witness produced by defendant, who testified that in 1944 testator informed him he was going to provide for his nephews and nieces in a will, and the testimony of Timothy E. Leland, a witness called on cross-examination, who testified that he understood that the will was to provide for Eugene Clark Ecclestone for life and the Canadian heirs were to get the rest of it. It is also urged by defendants that to hold that the vesting of the entire estate in the son leads to an unnatural and absurd result. In Hay v. Hay, 317 Mich 370, 404, we said:
"We are not concerned with the advisability or wisdom of the testator's will. If, as we hold the provisions of the will are within the requirements and limitations of law, the testator's disposition of his estate, as it appears from the 4 corners of his will, must be sustained."
We note that if testator made no will the son would have inherited all of his father's estate. The right and privilege to make a will or fail to make a will rested solely with Edwin Clifford Ecclestone. We hold that the trial court was in error in holding that the testator intended to place his property in trust during his son's lifetime.
The judgment should be reversed and remanded for entry of judgment for appellants, and for remand to the probate court for further appropriate proceedings.
CARR and DETHMERS, JJ., concurred with SHARPE, J.
*24 BUTZEL, C.J.
The main question first to be determined in this case is whether the will on its face is ambiguous. What is the meaning of the term "heirs" in paragraph 5 of the will, quoted in Mr. Justice SHARPE'S opinion for reversal, when construed in connection with paragraph 4 of the will? In paragraph 4 testator provides for a trust for the support and maintenance of his son. The opinion for reversal holds that the word "heirs" means a single heir, the son. The query immediately arises, why should there be a paragraph 4 for the support of the son if he is to take the entire estate? Further, why should his support be limited to $300 a month by paragraph 4 when according to the claim of appellants he is entitled to the entire estate? In the second sentence of paragraph 5 the testator, after referring to his heirs-at-law in the previous sentence, provides for the distribution in the event of the death of any brother or sisters. It is further quite evident that the use of the plural word "heirs" evidenced a class in testator's mind and that his son was not to be included within that class. Upon reading the entire will the query naturally arises: Why make a will at all if testator intended that his son take the entire estate as the sole heir? It is possible that he wanted to keep the business going 5 years but the face of the will does not disclose the reason. We believe that there is such ambiguity in the will that extrinsic evidence is required to determine its meaning.
In 2 Simes, Law of Future Interests (1936), § 422, it is stated:
"Where a testator devises a life estate or defeasible fee to a person who is one of his heirs, followed by a remainder or executory interest to the testator's heirs, it is arguable that an incongruity has arisen which requires us to depart from the primary meaning of the word `heirs.' If the testator gave the heir *25 a present interest, is it probable that he meant to give him also a share in the future interest? * * *
"Even though we hold that heirs are to be determined as of the testator's death, it is still possible to imply an exception to the class of heirs. For example, a testator has devised Blackacre `to A for life, remainder to my heirs.' The testator's sole heirs at his death are A, B, and C. While we would find it extremely difficult to construe the will to read, `Remainder to those who would have been my heirs had I died when A dies,' it would be possible to construe it thus, `Remainder to my heirs, except A.' A considerable number of courts have refused to imply the exception of the heir who received the present interest, though others have done so. It is clear, however, that the fact that the person who is the donee of the present interest is an heir of the testator may be sufficient, when coupled with other facts, either to support the conclusion that heirs of the testator are to be determined as of the death of the possessory owner, or that the possessory owner is to be excluded from the class of heirs." (Emphasis added.)
And in commenting upon the problem where A is the sole heir, the learned writer states:
"However, if the limitations are simply `to A for life, remainder to the testator's heirs,' it would be more difficult to assume that the testator intended A to take the remainder."
In 3 Restatement, Property (Future Interests), § 305, are set forth rules of construction of limitations to "heirs." These rules are said to apply when no contrary intent of the conveyor is found from additional language or circumstances. In comment X to section 305, it is stated:
"If at the time stipulated for the ascertainment of heirs, the life tenant is one of the heirs or the sole heir, his exclusion is not justified unless an intent *26 of the conveyor to exclude him is found from additional language or circumstances. * * * The life tenant is excluded from the ascertained group, however, if the gift to him is `in full of all other claims' * * * or if the gift to the heirs is made on the assumption that the life tenant died before the designated ancestor."
And in section 308, comment K:
"If a person to whom a prior interest in the subject matter of the conveyance has been given is the sole heir of the designated ancestor at the death of such ancestor, there is some incongruity in also giving such person all the interest under the limitation to `heirs' or `next of kin.'"
Annotations in 13 ALR 615, 20 ALR 356, 30 ALR 915, 61 ALR 1011, and 30 ALR2d 393, under the title "Right of devisee of precedent estate to take under limitation over to heirs or next of kin" set forth the many cases involving this legal issue. An enumeration and complete analysis of the many cases therein cited would be of little further benefit. It is clear that the various courts differ essentially only on the interpretation of the different facts presented in each individual case. As a summary, it may be stated that the majority of decisions have failed to find additional facts justifying the exclusion of the donee of the precedent estate from the limitation over to the heirs.
Does the precedent bequest, "coupled with other facts," in the present case evidence an intent of the testator to exclude his son from the class designated by the use of the term "heirs;" or, does such term as used in the will in the present case raise an ambiguity justifying the admission of extrinsic evidence to explain that ambiguity? Justice SHARPE says that the term as used in this will can have only one technical meaning.
*27 In the case of Bailey v. Bailey, 25 Mich 185, the Court stated at page 188:
"The word `heirs' is not, taken by itself, conclusive as to the persons intended to take. It may, doubtless, have a broad or a narrow meaning, according as the one or the other is indicated by the context."
See, also, Hascall v. Cox, 49 Mich 435; Turner v. Burr, 141 Mich 106; Nicoll v. Irby, 83 Conn 530 (77 A 957); In re Miller's Estate, 275 Pa 30 (118 A 549, 30 ALR 913); 31 Mich L Rev 356.
The use of the plural "heirs" rather than the singular "heir" has been held to be evidence of the class intended to take. Nicoll v. Irby, supra; In re Miller's Estate, supra; Oleson v. Somogyi, 90 NJ Eq 342 (107 A 798), affirmed 93 NJ Eq 506 (115 A 526); In re Bishop's Estate, 126 Misc 722 (215 NYS 237); Estate of Wilson, 184 Cal 63 (193 P 581). See, also, Morrison v. Estate of Sessions, 70 Mich 297, 308 (14 Am St Rep 500), where this Court stated:
"The testator used the term `lawful heirs' in its ordinary and well-understood sense, as referring to a class upon whom descent of property was cast by the statutes of descent. Had he intended the bequest for her, he would not have said `lawful heirs,' but `lawful heir.' He had not her in his mind, but his numerous kindred who by the statute would inherit his property."
Paragraph 5 of testator's will reads:
"I direct my executors to continue the operation of my business, The Ecclestone Chemical Company, Inc., for a period of 5 years from the date of my death, at which time I direct them to sell said business and all the real and personal property in my estate and convert the same into cash, and then to distribute the cash to my heirs-at-law who may be living at the time of my death, said distribution to be made in accordance with the laws of the State of *28 Michigan on descent and distribution of property. In the event of the death of my brother or sisters, then I direct that the share that would have gone to such brother or sisters shall go to his or her children."
The use of the term "heirs-at-law" directly followed by the sentence expressly referring to the brother and sisters and their children is some evidence of the meaning that the testator gave to the term "heirs." The testator speaks affirmatively of a share of the estate that would go to the brother and sisters. If the term "heirs" is interpreted to mean solely the son, then the brother or sisters would take no share of the estate. This sentence I believe is certainly an indication that the testator intended to use the term "heirs" in other than the strict technical sense and had no intent to include the son within its meaning, even though the primary purpose of the sentence otherwise may have been to provide a per stirpes distribution.
Paragraph 4 of the will names the son as the beneficiary of a trust for support and maintenance. It seems significant that the testator expressly limited the amount for support and maintenance to $300 per month. How is this express limitation to be reconciled with an interpretation that the son is to take the entire estate as the sole heir of the testator? If the remainder of the estate were to vest in the son upon the death of the testator the remainder could be assigned or conveyed for value and thus render ineffectual the testator's express attempt to limit the son's interest to a reasonable amount for support and maintenance. See Boston Safe Deposit & Trust Co. v. Waite, 278 Mass 244 (179 NE 624); Thompson v. Bray, 313 Mass 717 (49 NE2d 228), wherein the courts construed the express limitation in a precedent estate as indicative that the testator's intent *29 was to exclude such taker from a class gift to the heirs.
It is difficult to reconcile the multitude of cases that have arisen in regard to the question presented herein. It will be found, however, that cases which seem to support the views enunciated in the opinion of Mr. Justice SHARPE differ in their facts from those in the instant case. There is no question but that the main case relied upon for reversal is that of Rand v. Butler, 48 Conn 293, decided in 1880, and commented upon in the notes in 13 ALR 622. The facts were analogous to those in the instant case. However, in the notes in the recent edition of 30 ALR2d at pages 423, 424, Rand v. Butler, supra, is further discussed and the editor calls attention to the following:
"It may be noted that the court observed that if the opposite construction were taken, the remainder would be void for remoteness under the statute then in existence, thus creating an intestacy with the result that the sole heir would take in any event."
A reading of the will leads one to the conclusion that it is ambiguous and, therefore, extrinsic evidence is admissible and proper to show what the term "heirs" meant in paragraph 5 of the will and to show the intent of the testator. In addition to the facts stated in the opinion for reversal, it should be noted that the testator's son had for over 20 years prior to the execution of the will suffered from a mental disease as a result of syphilis; that he had become progressively worse and testator was told that the son could not live over 2 or 3 years longer. The trial judge commented upon the fact that the file of the probate proceedings which were before him showed that the son's condition was so bad that the physician believed it unsafe for him to appear in *30 court at the time he was declared a mental incompetent.
The son is confined as a mental patient in the Wayne County General Hospital. With the consent of all parties, through their counsel, and in recognition of the fact that the testator wanted his son properly cared for, there was an order entered in the probate court increasing the monthly sum for the care of the son to $600 per month because of the increased cost of caring for him. This is disclosed by the probate court records which have not been included in the record on appeal, but which order is indirectly referred to. There has been no appeal from this order of the probate court and no objection is made to it.
The trial judge ruled that the will was ambiguous in that it was uncertain in regard to the extent of the estate to be taken by the son and also indefinite as to the meaning the testator intended to attribute to the term "heirs-at-law." He therefore admitted parol testimony and extrinsic evidence in order to ascertain the testamentary intent. This evidence, as indicated in the opinion of Justice SHARPE, was to the effect that the testator was on very friendly terms with his brother and sisters and nieces and nephews; that the testator stated that he was going to provide for his son and nieces and nephews in his will, and that the testator had stated that his nieces and nephews would eventually have the property. The testimony was also to the effect that the testator knew that his son could never take an active part in society or manage his own affairs; that he was mentally and physically incompetent; and that the physicians had advised the testator that his son could not live more than 2 or 3 years.
In the light of this evidence the trial judge construed the will as intending to establish a trust for the support and maintenance of the son during his *31 lifetime, with the remainder of the estate to vest in the "heirs-at-law," and exclude the son from such designation.
The order of the trial court construing the will is affirmed and the case remanded to the circuit court, which in turn will remand it to the probate court for further proceedings in accordance with the circuit court's order. Appellants will recover costs in this Court.
BUSHNELL, BOYLES, and REID, JJ., concurred with BUTZEL, C.J.
KELLY, J., took no part in the decision of this case.