*In re* DODGE TRUST

Docket Nos. 54973, 54996, 55290, 55311, 55335, 55337, 55356. Submitted March 5, 1982, at Detroit.—Decided November 22, 1982. Leave to appeal applied for.

The matter of the distribution of the corpus of the testamentary trust created in 1920 pursuant to the will of John F. Dodge was brought before the Wayne Probate Court. Willis F. Ward, J., entered an opinion and order determining those entitled to claim a share of the trust corpus and the portion of the corpus allotted to each claim.

John F. Dodge died testate in 1920. Pursuant to his 1918 will, a residuary trust was created. The will provided that the net income of the trust should be distributed in quarterly payments during the lifetime of each to his wife, Matilda, his daughters, Winifred, Isabella, and Frances, and his son, Daniel, each receiving one-fifth of said income. His son, John Duval Dodge, received nothing under the trust. The will further provided that upon the death of his wife, Matilda, her portion of the income should be divided among the named income beneficiary daughters and son on an equal basis. Upon the death of any named child without issue, that child's share of the trust income was to be divided equally among the remaining named children. Upon the death of any named child with surviving issue, that child's portion of the income was to be paid to the surviving issue of that child during the lifetime of the remain-

REFERENCES FOR POINTS IN HEADNOTES

[1] 80 Am Jur 2d, Wills §§ 1128, 1140, 1143.
[2, 4, 6] 80 Am Jur 2d, Wills §§ 1206, 1207.
[3] 28 Am Jur 2d, Estates §§ 128, 222, 252, 253.
[4] 28 Am Jur 2d, Estates § 269.
[5] 80 Am Jur 2d, Wills §§ 1768, 1771-1774.
[6] 76 Am Jur 2d, Trusts § 139.
[7, 8, 10] 28 Am Jur 2d, Estates § 307.
   80 Am Jur 2d, Wills § 1651.
   Who must bear loss occasioned by election against will. 36 ALR2d 291.
[9] 6 Am Jur 2d, Assignments § 119.
[11] 80 Am Jur 2d, Wills § 1205
[12] 79 Am Jur 2d, Wills § 648.

ing named children. Upon the death of all the named children the corpus of the trust was to be distributed "to the heirs of my said children, Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge, and Daniel George Dodge, in such proportion as by law such heirs shall be entitled to receive same".

John Duval Dodge contested his father's will. Pursuant to statute, John Duval Dodge settled his claim against his father's estate in 1921, whereby in exchange for his transfer and assignment to Matilda, Winifred, Isabella, Frances, and Daniel of any interest he might have under the will or testamentary trust he received $1,600,000, plus interest. John Duval Dodge died in 1942, leaving a widow, Dora, who died in 1950, and a daughter, Mary Ann Dodge Danaher.

Matilda Dodge, widow of decedent, elected to take her statutory share instead of taking under the will. In 1925, she married Alfred Wilson. In 1931, they adopted Richard S. Wilson and Barbara Wilson Eccles. Matilda Dodge Wilson died in 1967, her interests having been assigned to the Matilda R. Wilson Fund.

Daniel George Dodge died on his honeymoon in 1938 leaving a widow, Annie Laurine Dodge (now Van Etten). The widow elected to take the statutory share rather than under Daniel's will. Annie Laurine Dodge, in 1940, entered into an income fund settlement and trust corpus purchase agreement with her sisters-in-law, Winifred, Isabella, and Francis, whereby, in exchange for the payment by the sisters of $1,250,000, she gave up all right, title, and interest she might have in the corpus of the trust. In 1980, Annie Laurine Dodge Van Etten sought reformation of the 1940 settlement on the ground of mutual mistake. The matter of reformation of the 1940 settlement is still pending in Wayne Circuit Court.

Isabella Cleves Dodge Sloane died in 1962, without issue or surviving spouse or parents, while a resident of Florida.

Frances Matilda Dodge Van Lennep died in 1971, survived by her husband, Frederick L. Van Lennep, whom she had married in 1949. She also left surviving her three children, Judith Frances Johnson McClung, born of Frances' first marriage to James P. Johnson, Jr., Fredericka Van Lennep Caldwell, and John Francis Van Lennep. All the children survive.

Winifred Dodge Gray Seyburn died in 1980 survived by four daughters: Winifred Gray Seyburn Cheston, Suzanne Gray Seyburn Meyer, Edith Seyburn Quintana, and Isabella Seyburn Harte. All of these children survive. The death of Winifred

Dodge Gray Seyburn, being the last of the offspring of John F. Dodge to die, operated to terminate the residuary trust and give rise to this litigation to determine the distribution of the corpus of that trust.

Seven appeals were taken from the opinion and order determining distribution of the corpus of the trust. Those appeals were consolidated on appeal. *Held:*

1. The will of John F. Dodge evidences an intent that the term "heirs" as used in the provision governing the distribution of the trust corpus means those persons who would take under the statute establishing intestate distribution rather than the more restrictive meaning of "issue". The "heirs" of each of the named children are to be determined by the Michigan statute establishing intestate distribution in effect on the date of the death of each named child. The interests of those claiming as remaindermen became vested on the dates of death of the named child through whom the claims were based.

2. The 1940 corpus purchase agreement constitutes an absolute bar to any claim by Annie Laurine Dodge Van Etten, widow of Daniel George Dodge, to any share of the trust corpus. Such holding is made without prejudice to whatever disposition may be made in the equitable action to reform the corpus trust agreement which is pending in Wayne Circuit Court.

3. The Matilda R. Wilson Fund, assignee of the interests of Matilda Dodge Wilson, is not entitled to an interest in the corpus of the trust on the basis that Matilda Dodge Wilson was an heir of Daniel George Dodge. Matilda Dodge Wilson, by electing to take against the will of John F. Dodge, did so in lieu of taking any interest under the will, including the possible interest of being a contingent remainderman. The fund, however, is entitled to the interest acquired by reason of the assignment of interests made by John Duval Dodge in the 1921 settlement agreement, since John Duval Dodge acquired an interest in the trust corpus by being an heir of his brother, Daniel George Dodge.

4. Since the interests of those making claims through Daniel George Dodge became vested on his death in 1938 and the determination of those interests were thereby fixed by the law in effect at that time, Richard S. Wilson and Barbara Wilson Eccles, adopted children of Matilda Dodge Wilson during her second marriage and thereby adopted half-brother and adopted half-sister of Daniel George Dodge, are not entitled to share as heirs of Daniel. In 1938, when the interests vested, an adopted person had no right to inherit from adoptive kindred. Since those who would have remainder interests flowing through

Daniel George Dodge became fixed upon his death, the 1966 statute relating to adopted persons is not applicable.

5. By virtue of the 1921 settlement, the estate of John Duval Dodge and those claiming through the estate are not entitled to any interest in the trust corpus. While Mary Ann Dodge Danaher, daughter of John Duval Dodge, has no claim to the trust corpus through her father's estate, she is entitled to her interest in the corpus acquired by being an heir of Isabella Cleves Dodge Sloane.

Affirmed.

1. Wɪʟʟs — Jᴜᴅɪᴄɪᴀʟ Cᴏɴsᴛʀᴜᴄᴛɪᴏɴ — Tᴇsᴛᴀᴛᴏʀ's Iɴᴛᴇɴᴛ.

The cardinal rule of law and the predominant rule in the construction and interpretation of testamentary instruments is that the intent of the testator governs if it is lawful and if it can be discovered; unless a will is ambiguous on its face, the testator's intention is derived from the language of the will.

2. Wɪʟʟs — Tʀᴜsᴛs — Hᴇɪʀs — Dᴇsᴄᴇɴᴛ ᴀɴᴅ Dɪsᴛʀɪʙᴜᴛɪᴏɴ.

Language in a 1918 will directing that upon the happening of certain events the corpus of a testamentary trust shall be distributed to the "heirs" of the testator's children will be construed to mean that the distribution shall be to those persons who would take under the statute establishing intestate distribution where there appears in the will no evidence of an intent that the term "heirs" was to have the more limited meaning of "issue" and it appears that the draftsman of the will was aware of the effect of using the word "heir" rather than "issue".

3. Tʀᴜsᴛs — Cᴏɴᴛɪɴɢᴇɴᴛ Rᴇᴍᴀɪɴᴅᴇʀs — Vᴇsᴛɪɴɢ ᴏғ Iɴᴛᴇʀᴇsᴛs.

The contingent remainder interests in the corpus of a testamentary trust, in the absence of an expression by the testator of a contrary intent, become vested at the date of the death of the person through whom the contingent remainder interests flow; only the clearest expression of a preference for delayed vesting will justify a departure from the favored rule of early vesting.

4. Wɪʟʟs — Tʀᴜsᴛs — Hᴇɪʀs — Cᴏɴᴛɪɴɢᴇɴᴛ Rᴇᴍᴀɪɴᴅᴇʀs — Dᴇsᴄᴇɴᴛ ᴀɴᴅ Dɪsᴛʀɪʙᴜᴛɪᴏɴ.

The meaning of the word "heirs" as used in the provision in a will defining the distribution of the corpus of a testamentary trust is determined with reference to the statute governing intestate distribution in effect at the time of the death of the person through whom the contingent remainder interests flow where the will creating the trust established an intent that the

corpus should be distributed to the heirs as defined by the statute controlling intestate distribution and the contingent remainder interests should vest upon the death of the person through whom the interests flowed.

5. TRUSTS — PERSONAL PROPERTY — REAL PROPERTY — BLENDED TRUST.

A testamentary trust, the corpus of which is made up almost entirely of personal property, will not be considered to be a blended trust of both real and personal property merely because one piece of real estate is included in the trust corpus where such real property represents only about one one-thousandth of the total value of the trust property and where to consider the trust as being a blended trust would defeat the clear intent of the testator.

6. WILLS — TRUSTS — HEIRS — DESCENT AND DISTRIBUTION.

The meaning of the term "heir" when used in the will of a Michigan testator with respect to the distribution of the corpus of a testamentary trust, in the absence of any contrary intention by the testator, will be ascertained by reference to the law of the State of Michigan, the testator's domicile.

7. WILLS — WIDOW'S ELECTION — CONTINGENT REMAINDERS — TRUSTS.

A widow's election to take the statutory share in lieu of the testamentary distribution where the statute in effect at the time of the election permitted the widow "to take any interest" that may be given her or, in lieu thereof, to take what would have passed under the statute of distributions causes the widow or her estate to lose any contingent remainder interests in the corpus of a trust created by that will she might have acquired under her spouse's will (1915 CL 13805).

8. WILLS — WIDOW'S ELECTION — DESCENT AND DISTRIBUTION.

A widow's election to take against the will of her deceased spouse causes the remainder of the estate to be distributed as if the electing spouse had predeceased the testator.

9. ASSIGNMENTS — RIGHTS ASSIGNED.

An assignee acquires only the rights possessed by his assignor at the time of the assignment.

10. WILLS — WIDOW'S ELECTION — TRUST CORPUS.

A widow's election to take against the will, which by statute acts as a renunciation of any interests she might have otherwise received under the will, does not deprive such widow of any

rights or interests in the corpus of a testamentary trust which she may have acquired by reason of a settlement with one who has a contingent remainder interest in the corpus of the trust.

11. WILLS — TRUSTS — HEIRS — ADOPTED PERSONS.

The statutory provision providing that the term "heir" used in a trust agreement or will executed on, before or after January 23, 1966, shall be construed to mean any adopted person is inapplicable where the contingent remainder interests in the corpus in which the adopted "heir" seeks an interest became vested in 1938, since said statutory provision is not applicable to vested interests and in 1938 an adopted person was not considered to be an "heir" of adopted kindred (MCL 700.128; MSA 27.5128).

12. WILLS — DESCENT AND DISTRIBUTION — DISINHERITANCE.

The issue of persons who have been disinherited by the terms of a testator's will are not impliedly divested of their own independent rights under the will.

*Bodman, Longley & Dahling* (by *Louis F. Dahling, George D. Miller, Jr.,* and *Charles N. Raimi),* for Joseph Freedman.

*Honigman, Miller, Schwartz & Cohn* (by *Jason L. Honigman, David K. Page, Charles Nida, Phyllis G. Rozof,* and *Norman C. Ankers),* for Judith McClung.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Raymond T. Huetleman, Jr., John R. Dykema* and *Paul Owen Ashba),* for Fredericka Van Lennep Caldwell, John F. Van Lennep, and Manufacturers National Bank of Detroit, trustee under the will of Frances Dodge Van Lennep.

*Tolleson, Mead, Welchli & Dahn* (by *Roy M. Tolleson, Jr.,* and *Robert D. Welchli),* for Frederick L. Van Lennep.

*Fildew, Hinks, Gilbride, Miller & Todd* (by *John*

*H. Fildew, Alan C. Miller,* and *Randall S. Wangen),* for Annie Laurine Dodge Van Etten.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Thomas E. Coulter, John D. Mabley* and *Timothy W. Hefferon),* for Mary Ann Dodge Danaher and estate of John Duval Dodge.

*Butzel, Long, Gust, Klein & Van Zile* (by *George E. Brand, Jr., Margaret E. Greene,* and *Carl Rashid, Jr.),* for Matilda R. Wilson Fund.

*Clark, Klein & Beaumont* (by *James E. Beall),* for Detroit Bank & Trust Company, trustee under the will of John F. Dodge.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Thomas E. Owen* and *Henry M. Grix),* for Winifred S. Chester, Suzanne S. Meyer, Edith S. Quintana, and Isabel S. Harte.

*Edwards & Edwards* (by *Sharon-Lee Edwards* and *William J. Richards),* for Richard Wilson and Barbara Wilson Eccles.

Before: BEASLEY, P.J., and D. C. RILEY and P. J. MARUTIAK,* JJ.

BEASLEY, P.J. This appeal is taken by various interested parties from an order of the Wayne County Probate Court directing distribution of the trust corpus of a testamentary trust arising under the will of John F. Dodge, deceased. The order was entered pursuant to a thorough and carefully drawn opinion prepared by Judge Willis F. Ward of the Wayne County Probate Court, in which he

* Circuit judge, sitting on the Court of Appeals by assignment.

made findings of fact, conclusions of law and determination of claims.

John F. Dodge, an early and highly successful automobile manufacturer, died testate on January 14, 1920. His will, which was dated April 4, 1918, was admitted to probate in the Wayne County Probate Court. In his will, John F. Dodge created a residuary trust which provided, among other things, as follows:

"14. Subject to the carrying out of the foregoing provisions of this my last Will, I direct my said trustees to expend the net income of my said estate, as follows:

"(a) To pay to my wife, Matilda R. Dodge, one fifth of same in quarterly payments, during the life of my said wife;

"(b) To pay to my daughter, Winifred Dodge Gray, one fifth of same in quarterly payments, during the life of my said daughter;

"(c) To pay to my daughter, Isabella Cleves Dodge, one fifth of same in quarterly payments, during the life of my said daughter;

"(d) To set aside each year until my daughter, Frances Matilda Dodge shall become twenty five years of age, one fifth of said net income for the benefit of my said daughter, and out of same to pay to my said daughter in quarterly payments, such sums as may be necessary, in the judgment of my said trustees, to provide my said daughter with proper maintenance for herself and her home, if she shall be established in a home of her own, clothing, education and recreation; and I direct my said trustees to invest and re-invest and keep invested so much of said income herein provided for my said daughter, as shall not be used for her benefit under this clause up to the time she shall become twenty five years of age.

"When my said daughter shall become twenty five years of age, I direct my said trustees to pay to her all such sums as may have been accumulated for her by my said trustees hereunder, and thereafter to pay to

my said daughter said one fifth of said income in quarterly payments during the life of my said daughter.

"(e) To set aside each year until my son, Daniel George Dodge, shall become twenty five years of age, one fifth of said net income for the benefit of my. said son, and out of same to pay to my said son in quarterly payments, such sums as may be necessary in the judgment of my said trustees, to provide my said son with proper maintenance for himself and his home, if he shall be established in a home of his own, clothing, education and recreation; and I direct my said trustees to invest and re-invest and keep invested so much of said income herein provided for my said son, as shall not be used for his benefit under this clause up to the time he shall become twenty five years of age.

"When my said son shall become twenty five years of age, I direct my said trustees to pay to him all such sums as may have been accumulated for him by my said trustees hereunder, and thereafter to pay to my said son said one fifth of said income in quarterly payments during the life of my said son.

"(f) Upon the death of my said wife, Matilda R. Dodge, I direct my said trustees to dispose of the one fifth part of said income herein provided to be paid to my said wife, for my said daughters, Winifred Dodge Gray, Isabella Cleves Dodge and Frances Matilda Dodge and my said son, Daniel George Dodge, share and share alike in the same manner that my trustees are hereinbefore directed to dispose of the portions of said income provided for my said children respectively.

"(g) In the event that any of my children, Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, shall die without leaving lawful issue him or her surviving, then in that event, I direct my said trustees to dispose of the share of said income provided for such deceased child or children, among the survivors of said Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, in the same manner respectively that my said trustees are directed to dispose of the portions of said income provided for said Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge;

"(h) In the event that any of my said children, Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, shall die, leaving lawful issue him or her surviving, then I direct my said trustees to pay the portion of such income provided for such deceased child or children to such issue of such deceased child or children or the lawful representatives of such issue in quarterly payments as long as any of my said children, Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, shall survive, and upon the death of all of my said children, Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, then I direct my said trustees to convey my said estate to the heirs of my said children, Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, in such proportion as by law such heirs shall be entitled to receive same.

"The provisions I have made in this Will for my son John Duval Dodge, have been made after careful thought and deliberation on my part, un-influenced by any person or persons whomsoever, and I believe these provisions to be the most wise I can make for my said son, John Duval Dodge. I make this explanation in order that it may be known that I have given careful thought to the claims of my said son, John Duval Dodge, and in order that neither my wife, nor any of my children may be accused of having influenced me in reference to the provisions that I have herein made in regard to my said son."

John F. Dodge left surviving him his widow, Matilda R. Dodge (Wilson), and six children, John Duval Dodge, Winifred Dodge Gray (Seyburn), Isabella Cleves Dodge (Sloane), Frances Matilda Dodge (Van Lennep), Daniel George Dodge, and Anna Margaret Dodge. The first three children were born of testator's marriage to Ivy Dodge, who died in 1900, and the second three were born of his marriage to Matilda R. Dodge (Wilson). His widow, Matilda, remarried in 1925 to Alfred Wilson, and

they adopted two children, Richard S. Wilson and Barbara Wilson (Eccles). Matilda, who died in 1967, is perhaps best known for her generous bequests which have become the site of Oakland University and the various Meadowbrook cultural events.

Winifred Dodge Gray (Seyburn) was the first-born offspring of John F. Dodge and the last to die in 1980. Her death in 1980 operated to terminate the residuary trust created under the will. Winifred Dodge Gray (Seyburn) had two children as issue of the Gray marriage, Winifred Gray Seyburn Cheston, born in 1917, and Suzanne Gray Seyburn Meyer, born in 1920. Winifred Dodge Gray (Seyburn) also had two children as issue of the Seyburn marriage, Edith Seyburn Quintana, born in 1923, and Isabel Seyburn Harte, born in 1924. These four children of Winifred Dodge Gray (Seyburn) survive.

Isabella Cleves Dodge (Sloane) died March 9, 1962, without issue, while a resident of Florida.

John Duval Dodge, who was substantially disinherited in his father's will, died in 1942, leaving a widow, Dora Dodge, who died in 1950, and a daughter, Mary Ann Dodge (Danaher), who survives.

Anna Margaret Dodge was born June 14, 1919, subsequent to execution of her father's will in 1918. She died intestate on April 13, 1924.

Daniel George Dodge died August 15, 1938, leaving surviving him his widow, Annie Laurine Dodge (Van Etten), and his mother, Matilda R. Dodge (Wilson).

Frances Matilda Dodge (Van Lennep) died in 1971, survived by her husband, Frederick L. Van Lennep, whom she had married in 1949. Also, she left surviving her three children, Judith Frances

Johnson (McClung), born in 1941 as issue of Frances' first marriage to James P. Johnson, Jr., whom she divorced in 1948, Fredericka Van Lennep (Caldwell), born in 1951, and John Francis Van Lennep, born in 1952, all of which children survive.

Not mentioned in the will was testator's infant daughter, Anna Margaret Dodge, she having been born June 14, 1919, a year after execution of the will. She took as a pretermitted heir, *i.e.,* the same share she would have received if the testator died intestate. However, she died intestate at age five in 1924, and the devolution of her property was affirmed in *In re Dodge's Estate,* 242 Mich 156; 218 NW 798 (1928).

John Duval Dodge attacked the validity of his father's will, which case was settled under a then newly enacted statute authorizing such settlements, which statute was enacted largely as a result of this subject situation. Subsequently, in 1939, John Duval Dodge renewed his will contest and attempted to set aside the settlement agreement. The decision of the circuit court upholding the settlement agreement and rejecting the claim that the will and trust were invalid was affirmed in *Dodge v Detroit Trust Co,* 300 Mich 575; 2 NW2d 509 (1942).

In the within proceedings, a guardian ad litem was appointed to represent all unknown claimants to the trust and, after extensive discovery procedures, he reported that there were not any additional interested parties. On this appeal, we consolidate seven separate appeals (files), in some of which there are cross-appeals. We have reviewed at least 30 briefs which have been filed, varying in length from 5 pages to more than 80 pages.

At the outset, we hold that since the probate

court order, which is the subject of all these appeals, affects the rights of the parties with finality, it is a final order, directly appealable to this Court.[1]

In his splendid opinion, the probate judge discussed four issues of law and made detailed rulings cited to authority. First, he dealt with the meaning of the word "heirs" as used in ¶ 20:14(h) of the last will and testament of John F. Dodge, deceased. The issue arises because, in the termination provision of the testamentary trust, the testator said:

"then I direct my said trustees to convey my said estate to the heirs of my said children, Winifred Dodge Gray, Isabella Cleves Dodge, Frances Matilda Dodge and Daniel George Dodge, in such proportion as by law such heirs shall be entitled to receive same."

The question is whether the word "heirs" was used in the will in its technical sense to denote those persons who inherit under the intestacy laws or whether "heirs" as used in the will was intended to designate only the "issue" or "children" of testator's children.

The cardinal rule of law and the predominant rule in the construction and interpretation of testamentary instruments is that the intent of the testator governs if it is lawful and if it can be discovered. This legal proposition finds support in many cases.[2] Unless the will is ambiguous on its

---

[1] *In re Swanson Estate*, 98 Mich App 347; 296 NW2d 256 (1980).

[2] *In re Butterfield Estate*, 405 Mich 702; 275 NW2d 262 (1979); *In re Ecclestone's Estate*, 339 Mich 15; 62 NW2d 606 (1954); *Gardner v City National Bank & Trust Co*, 267 Mich 270; 255 NW 587 (1934); *Scott v Scott*, 210 Mich 657; 177 NW 965 (1920); *In re Blodgett's Estate*, 197 Mich 455; 163 NW 907 (1917).

face, the testator's intention is derived from the language of the will.

In *Brooks v Parks*,[3] which was decided in 1915, about three years prior to the date of execution of the Dodge will, the will in question provided in the residuary clause that one-half would go to a daughter during her lifetime and after her decease to her children and that the other half would go to another daughter during her lifetime and after her decease *to her heirs*. The Court upheld an interpretation that provided that the residue left to the second daughter would pass to her husband, saying that he was an heir of his wife and, as such, would inherit her half. In so holding, the Court declined to interpret the entire will as evidencing a contrary intent. *Brooks* is authority for defining the word "heir" as designating the persons appointed by law to succeed in case of intestacy and for holding that wherever the word "heir" occurs in a will, unaccompanied by qualifying or explanatory expressions, it must be allowed the meaning the law gives it.

We are satisfied that, in 1918 when the will of John F. Dodge was drawn and signed, the word "heirs" was a technical term with a well and clearly defined meaning, namely, those designated by the statutes of intestate succession to receive one's estate on death and that "heirs" included the spouse of the decedent.[4]

We note that the attorney drawing John F. Dodge's will appears to have been able and experienced in the practice of probate law. He was not a mere tyro, unfamiliar with common and accepted

[3] 189 Mich 490; 155 NW 573 (1915).

[4] *Brooks v Parks, supra; In re Shumway's Estate*, 194 Mich 245; 160 NW 595 (1916); *Menard v Campbell*, 180 Mich 583; 147 NW 556 (1914).

usage in legal circles of words used in the descent and distribution of property upon death.[5]

In *In re Butterfield Estate*,[6] the Court dealt with this subject, saying:

" '[I]f the testator employed a draftsman skilled in the use of technical words these must be given their technical meaning. * * * Furthermore, to the extent that either a statute or established rule of decision attributes a certain meaning to particular words, that meaning must be accepted.' "

Thus, we ascribe to the word "heirs", as used in the subject will, its technical meaning as it existed in 1918 when the will was drafted and executed. We decline to conclude that the draftsman of the will made a "mistake" when he used in the will two different words, "issue" and "heirs". On the contrary, we believe that the attorney drawing the will used these two different words in their known, technical legal sense with the intention that the trust corpus descend differently than the trust income.

We acknowledge that a strong, visceral countering argument is made that the testator never intended that any part of his estate, either corpus or income from the testamentary trust, would pass outside of his bloodlines and that the testator intended that the natural objects of his bounty were those in the bloodlines, not spouses of his children, *e.g.,* a son-in-law. At the outset, in weighing the merits of this argument, we note that the law does not permit that we indulge in speculation regarding the testator's intention. We look first to

---

[5] 61 Supreme Court Records and Briefs, pp 346-361 (October Term, 1941).

[6] *Butterfield, supra,* pp 714-715, citing Atkinson, Law of Wills (2d ed), ch 15, § 146, p 811.

the will and only go beyond the language of the will if convinced that ambiguity is present. The fact that the testator named only his children and their issue to receive trust income, while leaving the residue of the trust corpus upon final termination to the heirs of his children, is not an indication of an ambiguity in the will.

In *Butterfield, supra,*[7] the Court disposed of this argument, saying:

"Although each case must be determined under its individual circumstances, in general, the testamentary disposition of trust corpus and trust income in different manners cannot logically compel a finding of ambiguity. See *In re Hicks Estate,* 345 Mich 448, 452-453; 75 NW2d 819 (1956). If such a testamentary scheme were to be considered inherently ambiguous, we would greatly increase the necessity of judicial construction of wills and unreasonably constrain the use of language presently considered clear and unambiguous; the net result would doubtless be interference with the long-standing and jealously guarded power to devise and bequeath. See MCL 702.1; MSA 27.3178(71) and MCL 702.4; MSA 27.3178(74)."

We decline to find that the will is ambiguous on its face. If there is not any ambiguity, then the questions of interpretation must be determined within the four corners of the instrument. In *In re Willey Estate,*[8] the Court said:

"The authorities are overwhelming that when there is no patent or latent ambiguity in the provisions of a will, the intention to be ascribed to the testator is that intention demonstrated in the will's plain language."

[7] *Butterfield, supra,* p 713.
[8] 9 Mich App 245, 249; 156 NW2d 631 (1967).

Thus, we conclude that John F. Dodge did employ a skilled attorney in the preparation of his will, and that the words employed must be given their accustomed technical meaning according to common legal usage.[9] In its legal and technical sense, the word "heir" is understood under established rules of decision as designating persons appointed by law to succeed in the case of intestacy. Wherever the word is employed unaccompanied by qualifying or explanatory expressions, it must be allowed the meaning the law gives it.[10] We hold that the term "heirs", as used in the will, means those persons designated by statute to receive that class of property under the laws of intestate succession.

The second issue decided by the probate court was when should the remainder (corpus) interests of the heirs of the testator's named children vest. Should it be the time of each child's death, or should it be later at the termination of the trust upon the death of the last surviving child?

Unless a testator clearly and unambiguously states to the contrary, vesting of contingent remainders shall be determined as of the date of death of the ancestor. We decline to hold that testator's will in this case clearly and unambiguously established the time of vesting at the date of the termination of the trust. Consequently, we conclude that the date of death of the ancestor is the time of vesting of the contingent remainder interests in this trust.

This conclusion finds support in the case law. *In*

---

[9] *Saier v Saier,* 366 Mich 515; 155 NW2d 279 (1962).

[10] *In re Ecclestone Estate, supra; In re Shumway's Estate, supra; Brooks v Parks, supra; Menard v Campbell, supra; Lyons v Yerex,* 100 Mich 214; 58 NW 1112 (1894).

*re Jamieson Estate*[11] is the leading case and is express authority for Michigan's preference for early vesting, the Court saying:

"[I]t has long been the law in Michigan that vested estates are to be favored, and that conditions of survivorship will not lightly be implied. * * * Indeed, we have characterized as a rule of property not to be disturbed the rule that when ambiguity exists whether a testator intended to condition a remainderman's taking of an estate merely upon survival of the testator or upon survival of the holder of a precedent estate, the latter condition should not be implied." (Citation omitted.)

In *Jamieson,* the Court rejected the argument that vesting should be postponed until the time of distribution, saying:

" 'In the accurate use of language, only those entitled to inherit at the death of another can be called his heirs. Accordingly, unless a contrary intention appears, a gift in a will to the heirs of a person, whether he be the testator or a life tenant or another, will be construed as a gift to such heirs determined as of the time of death of that person.' "[12]

Shortly before decedent's will was drafted in 1918, the Court, in *In re Shumway's Estate,*[13] stated that only the clearest expression of a preference for delayed vesting would justify a departure from the rule favoring early vesting. In *Jamieson,*

---

[11] 374 Mich 231, 237-238; 132 NW2d 1 (1965). See, also, 3 Restatement Property, § 308, p 1706, which states that where there is a gift to "heirs", then the statute is applied as of the death of the designated ancestor absent evidence of an intent to the contrary.

[12] *Jamieson, supra,* p 251, citing *New England Trust Co v Watson,* 330 Mass 265, 267; 112 NE2d 799 (1953).

[13] 194 Mich 245.

*supra,* the Court quoted *Shumway* with approval, saying:

"We conclude that unless a contrary intent is manifested, when a testator disposes of property to heirs, the heirs are to be determined upon the death of their ancestor. Such contrary intent will not be deduced from the bare fact that the heirs are secondary remaindermen. Nor will such contrary intent be found to exist simply because some of the testator's language may be strained into ambiguity, but rather 'only plain, unambiguous language by the testator will prevent application of that rule [favoring early vesting] in construing a will.' "[14]

*Shumway* also indicates that there is nothing particularly unusual about giving trust income to certain life tenants and a non-possessory (remainder) interest to a class of heirs that could include the life tenants themselves.

In the within case, it is contended that the following circumstances suggest that the deceased would have preferred to postpone vesting until termination of the trust: (1) the deceased's express desire to postpone vesting beyond the date of his own death; (2) the indications that the deceased would not have wanted John Duval Dodge to take as an heir of the named life tenants; and (3) the potential for greater federal estate taxation under a theory of successive vesting. These speculations, while interesting, do not justify departure from the established rule favoring early vesting.

As indicated in *Shumway, supra,* the intention to postpone vesting must be manifested and tangibly expressed in such language as plainly conveys the thought beyond mere surmise, conjecture, or supposition. We do not find such clear language in

---

[14] *Jamieson, supra,* p 252.

the will, plainly expressing a preference to postpone vesting until the termination of the trust. Postponing vesting beyond the date of his own death is no indication by the testator that he wanted to put it off as long as possible, until the death of his last surviving child which, in fact, turned out to be a period of approximately 60 years.

This is not a circumstance indicating any preference for vesting at the termination of the trust, as opposed to vesting on the dates of the respective deaths of the named children. Neither does the intention of the testator to exclude his son John Duval Dodge from significant[15] trust income during the life of the trust establish any intention to postpone vesting until the termination of the trust.

The argument in this regard is based on the very questionable assumption that the deceased did not even want John Duval Dodge to acquire any vested interest in the corpus of the trust as a possible heir of the four named children. The probate court properly rejected this argument that the deceased meant to prohibit John Duval Dodge from inheriting through his brothers and sisters as a contention based entirely upon speculation. The probate court correctly noted that "no language in the will expressly establishes this intention". Even if it were assumed that the testator did intend to preclude John Duval Dodge from taking as an heir of his siblings, the desire was not so plainly expressed as to warrant a departure from the established rule favoring early vesting.

Finally, the idea that the deceased planned to postpone vesting in order to avoid federal estate taxes is without merit. The will does not even

---

[15] The will directed the trustees to pay $150 per month to John Duval Dodge during his lifetime.

refer to federal estate taxes and does not appear to show any concern for them. The federal estate tax was newly enacted in 1918, was quite modest by today's standards, and would hardly have played a major role in the drafting of the will.

In any case, if tax consequences led the testator to prefer to postpone vesting, he should have expressed this preference in clear language in the will. As previously indicated, we do not find error in the conclusion of the probate court favoring vesting as of the time of the death of each ancestor named in the will, *i.e.,* the four named children of the testator.

The third issue discussed and decided by the probate court was whether the word "heirs", as used in the testator's will, should be defined according to the statutes of distribution in effect at the time of the death of each named life income beneficiary, rather than according to the statute of descent in effect at the testator's death. The probate court held that the statutes of distribution in effect at the date of death of the immediate ancestor should be applied in determining the heirs of the children named in the testator's will and in determining the share to which each such heir was entitled. The probate court recited three reasons for this conclusion.

First, the court said that the testator expressed a clear wish in his will that the heirs of his children should take "in such proportion as by law such heirs shall be entitled to receive same". The probate court interpreted this phrase to mean that the testator did not intend that the law at the time of his death would govern determinations to be made many years into the unpredictable future.

Second, the probate court noted that the trust corpus presently in question consists entirely of

personal property. No evidence was presented to refute this or to establish that real estate ever was intended to be included in the trust. See *Dodge v Detroit Trust Co, supra,* p 598.

Third, the probate court seemed to believe that, since it had already decided that "heirs" is to be defined by reference to the statute in existence at the date of death of the immediate ancestor, it would create a dilemma if it held that the statute was modified by the statute in effect at the date of the execution of the will, citing *Brooks v Parks, supra.*

The significance of this issue is that the statute of descent in effect at the time of the testator's death, 1917 PA 341; 1915 CL 11795,[16] left nothing to the husband of an intestate woman who died leaving issue to inherit her real estate. However, the statute of descent was amended by 1931 PA 79; 1929 CL 13440[17] to allow one-third of any real estate to descend to the surviving husband and the remaining two-thirds to go to the woman's issue. Furthermore, the statute of distribution gave the husband one-third of the woman's personal property.[18]

---

[16] 1915 CL 11795, provides in part:

"If such intestate shall die under the age of twenty-one years, and not having been married, all the estate that came to such intestate by inheritance from a parent, which has not been lawfully disposed of, shall descend to the other children and the issue of deceased children of the same parent, if there be such children or issue, and if such persons are in the same degree of kindred to said intestate they shall take equally, otherwise they shall take by right of representation."

[17] 1929 CL 13440, provides in part:

"If the intestate shall leave a husband or widow and no issue, one-half of the estate of such intestate shall descend to such husband or widow.

\*  \*  \*

"If the intestate shall leave a husband or wife and no issue, nor father, mother, brother nor sister, and there be no child of brother or sister, the estate of such intestate shall descend to the husband or wife of such intestate, as the case may be."

[18] 1915 PA 314; 1915 CL 13913, provides in part:

Thus, if the probate court applied the statute of distribution or the amended statute of descent to determine the "heirs" of the testator's daughter Frances, then it would properly find her surviving husband, Frederick L. Van Lennep, to be entitled to a one-third share of the quarter of trust corpus reserved for her (Frances') heirs.

On the other hand, if the probate court should have applied the statute of descent in effect at the time of the deceased's death, then Van Lennep was not entitled to take at all, and the entire quarter of the corpus passing to Frances' heirs would go to her children, including appellant, Judith Johnson McClung.

Therefore, in order for appellant McClung to prevail, she must prevail in both of the following propositions: first, that the deceased intended the statutes in effect at the date of his (testator's) death to apply to the determination of his children's heirs, and, second, that he intended the statute of descent, rather than the statute of distribution, to apply.

We reject both of these contentions. The language of the will reveals a clear intention to apply future intestacy laws, rather than those in effect at the time the will was drafted. The will provides specifically that the heirs of the testator's four named children should take "in proportion as by law such heirs *shall* be entitled to receive same". Furthermore, since the vesting of the heirs' interests should occur upon the death of each of the four named children, the application of any statutes other than those in effect on the dates of the four named children's respective deaths would be

"In any other case the residue, if any, of the personal estate shall be distributed in the same proportion and to the same persons, and for the same purposes, as prescribed for the descent and disposition of the real estate."

inconsistent and would create a kind of legal dilemma.

As indicated in *Brooks v Parks, supra,* there is nothing improper about applying a statute of distribution or descent enacted after the death of the testator. We are satisfied that the inclusion of a single piece of real estate, namely, the boat house, appraised at $40,000 in the inventory of the estate, was an obvious oversight. Thus, we do not believe that those cases which depend for decision on a conclusion that the property involved is "mixed" with both real and personal property are here applicable.

We would not believe that the testator intended to have a trust which had been so painstakingly prepared for the benefit of his named children be invalidated on account of the presence of any real estate. It would appear that the parcel of real estate, which we believe was included only by oversight, amounted to only about one one-thousandth of the total value of the trust property. See *Dodge v Detroit Trust Co, supra,* p 598. We are not inclined to believe that this "blend" of realty and personalty is the type that was before the courts in the cases cited by appellant[19] and upon which those cases depended for decision.

Furthermore, the real estate parcel included was sold in 1929 and, by the time the first of the four named children who were beneficiaries (Daniel) died in 1938, the trust property consisted entirely of personal property. It was well established at the time the will was drafted and executed that when a devise of personal property is made to the heirs of a given person, the heirs should be identified by application of the statutes in effect at the time of

[19] *Lyons v Yerex, supra; Allison v Allison's Executors,* 44 SE 904 (Va, 1903).

that person's death.[20] Therefore, we conclude that in determining the heirs of each of the four named life income beneficiaries of the trust, it was not error to apply the statute of distribution in effect at the date of each child's death.

The fourth issue considered and determined by the probate court was whether the statutes of the State of Michigan or of the state of domicile of the ancestor determine the "heirs". The issue, which presents a close and difficult question, relates to Isabella Cleves Dodge (Sloane), who died in 1962 while a resident of the State of Florida.

The significance of which state's law controls results from the fact that, in 1962, Florida law[21] provided that collateral kindred of the half blood would inherit only half as much as those of the whole blood while Michigan law[22] provided that heirs of the half blood in these circumstances would take equally with heirs of the whole blood. Thus, under Florida law the heirs of Isabella Cleves Dodge (Sloane) would take as follows: two-fifths to Winifred Dodge Seyburn, two-fifths to Mary Ann Dodge Danaher, and one-fifth to Frances Dodge Van Lennep, the latter being a half-sister because Isabella and Frances had different mothers. Under Michigan law, Winifred Dodge Seyburn, Mary Ann Dodge Danaher, and Frances Dodge Van Lennep would each take one-third.

As previously indicated, the Dodge will provided in ¶ 20:14(h) that, upon termination, the residue of the trust be conveyed to the heirs of the four named children.

In *Colvin v Jones,*[23] the Court said:

---

[20] *Hascall v Cox,* 49 Mich 435; 13 NW 807 (1882); *Turner v Burr,* 141 Mich 106; 104 NW 379 (1905).

[21] 1945 Fla Laws 731.24.

[22] 1948 CL 702.84.

[23] 194 Mich 670, 677; 161 NW 847 (1917).

"It is the rule that where the owner of property dies, intestate, * * * his personal property is distributed according to the law of his domicile."

Since Isabella Dodge Sloane died in 1962 domiciled in Florida, it is claimed that technically her heirs should be decided under Florida law. In this connection, 3 Restatement Property, § 305, pp 1674-1675, provides as follows:

"When a conveyor describes his conveyees as the 'heirs' of a designated person, it is primarily the same as if he had said 'those persons who would have succeeded to the property of the named ancestor if he had died intestate.' Thus, unless a contrary intent of the conveyor is found from additional language or circumstances, the applicable local law which is used to determine the persons who come within the term 'heirs' is the law which would be used to ascertain the heirs of the designated ancestor if he had owned the property in question and had died intestate (see Restatement Conflict of Laws, §§ 251, 308)."

The encyclopedic American Law of Property provides:[24]

"Suppose the subject matter of a devise is located in one state, the testator was domiciled in another state, and the ancestor whose heirs are designated as the beneficiaries is domiciled in still another state. The statute of which state is to be applied? Assuming that the average testator makes a disposition in favor of 'heirs', etc., only after he has exhausted his specific desires so that in effect he is saying 'Now let the law take its course,' the solution in the ordinary case of this conflict of laws problem becomes relatively simple. If the subject matter of the gift is land, the statute is the one in the state in which the land is located, *and if the subject matter is personal property, then the statute*

[24] 5 American Law of Property, § 22.58(a), which is cited in 53 Harv L Rev 207, 212-213, 228 (1937).

*should be the one in the state in which the ancestor is
domiciled. This seems the desirable resolution of the
conflict of laws problem."* (Emphasis added.)

Where personal property is involved, the normal
and technical meaning of "heirs" requires the use
of the statute of intestacy of the state of the last
domicile of the decedent whose heirs are being
determined. In holding to the contrary, the pro-
bate court placed heavy reliance on *In re Sewart
Estate*,[25] where the Court said:

"[T]he basic question in construing the will is the
intention of the testatrix. Such intention is to be deter-
mined, if possible, from the language of the instru-
ment."

In this case, the testator, John F. Dodge, created
a testamentary trust which provided for payment
of trust income to four named children, the oldest
of whom was under 25 at the time of execution of
the will. By its terms, the trust terminated upon
the death of the last survivor of the four named
children. We assume that the testator contem-
plated that the trust would continue for many
years and that there was nothing in the circum-
stances to indicate where each named child would
die.

The Dodge will does not expressly say that in
determining residuary heirs of the four named
children, resort should be had to the state of
domicile at the time of death of the deceased child.
Neither does the Dodge will expressly say that
residuary heirs of the four named children should
be determined under Michigan law. Under these
circumstances, we believe the *Sewart* decision is
controlling.

[25] 342 Mich 491, 497; 70 NW2d 732; 52 ALR2d 482 (1955).

In 52 ALR2d 482, 495, *Sewart* is described as illustrative of the general rule that in the absence of anything to indicate a contrary intention on the part of the testator, the "heirs" are ascertained by reference to the law of the testator's domicile.

In *Sewart,* the Court said, among other things:

"In passing on controversies of this nature courts have repeatedly recognized that the maker of the will was presumably familiar with the laws of his own State and ordinarily without specific information as to statutes in force in other States. Such situation may not be ignored in the construction of the language of a will."[26]

In *Sewart,* the Court also stated:

"A decision of the supreme court of Kansas in *Keith v Eaton,* 58 Kan 732; 51 P 271 (1897), is also in point. * * * In holding that the will must be construed in accordance with the law of the domicile of the testator, it was said * * *:

"'In the absence of a contrary meaning, to be gathered from the circumstances surrounding a testator or from the instrument as a whole, the sense of the words used by him is to be ascertained in the light of the law of his domicile. Presumptively, he is more familiar with that law than with the law of other jurisdictions. That is the law which is constantly with him, controlling his actions and defining his rights, and more naturally than any other law would be present to·his mind in the drafting of an instrument dispository of his property.' "[27]

We are aware that there are factual differences between *Sewart* and the within case, but we do not believe they are of a nature to require a different result than that reached by the probate court here. Consequently, we find that, in accordance

---

[26] 342 Mich 497.
[27] 342 Mich 499-500.

with *Sewart,* the intention of the testator was that the heirs of his four named children be determined under the laws of the State of Michigan. This intention is controlling.

In summary, giving effect to our rulings concerning these four issues discussed by the probate court, we hold that: (1) "heirs" as used in ¶ 20:14(h) of the will means those persons designated by statute to whom the law would give that class of property under the laws of intestate succession; (2) the contingent remainder interest of such "heirs" in the trust corpus vested at the date of death of the respective four named children of the testator; (3) the word "heirs" is defined as of the date of death of each of the four named children of the testator; and (4) in determining the "heirs" of each of the four named children of the testator, we look to the laws of the State of Michigan. However, these rulings do not resolve all of the claims and counterclaims made by the parties on appeal.

## Claim of Annie Laurine Dodge Van Etten

Daniel George Dodge, a son of John F. Dodge and Matilda R. Dodge (Wilson), drowned on August 15, 1938, at age 21, while on his honeymoon, a short time after his marriage to Annie Laurine Dodge (now Van Etten). At the time of his death, income had accumulated under the John F. Dodge Testamentary Trust for the benefit of Daniel George Dodge in an amount of approximately $10 million. Consequently, Annie Laurine Dodge, as the widow of Daniel George Dodge, elected to take her statutory share in lieu of bequests made to her under her husband's will. After the Oakland County Probate Court had rendered an opinion, dated January 10, 1940, that the income was an

asset of the estate of Daniel George Dodge, an appeal was taken to the Wayne County Circuit Court. On July 9, 1940, appellant Annie Laurine Dodge entered into an income fund settlement and corpus purchase agreement with her three sisters-in-law, Winifred Dodge Gray (Seyburn), Isabella Cleves Dodge (Sloane), and Frances Matilda Dodge (Johnson) (later Van Lennep) under which the latter three agreed to pay appellant the sum of $1.25 million. Among other things, the corpus purchase agreement provided as follows:

"All right, title and interest which First Party [Annie Laurine Dodge] may now or at any time hereafter, or upon the happening of any contingencies, have or become entitled to by virtue of being widow and heir of Daniel George Dodge, deceased, or for any other reason or upon any claim whatsoever, in or to any of the principal or corpus of the Estate now held in the residuary Trust under paragraph 20, sub-paragraph 14(h), of the Will of John F. Dodge, deceased."

In December, 1940, the Wayne County Circuit Court entered a final decree incorporating and enforcing this corpus purchase agreement but stating that nothing in the decree should be construed to determine who is entitled to share in the corpus of the trust as Daniel's heirs.

In August, 1980, nearly 40 years later, Annie Laurine Dodge Van Etten filed a complaint in the Wayne County Circuit Court seeking reformation of the corporate purchase agreement on the ground of mutual mistake. When the Wayne County Circuit Court removed this lawsuit to the probate court under the new Revised Probate Code, Annie Laurine Dodge Van Etten appealed to this Court and leave was granted.[28] This Court

[28] *Van Etten v Mfgr's National Bank of Detroit,* 119 Mich App 277; 326 NW2d 479 (1982).

reversed the order of the Wayne County Circuit Court and remanded the case to the circuit court for trial on the merits.

After reviewing the corpus purchase agreement, the probate court concluded that it constituted an absolute bar to the claim of Annie Laurine Dodge Van Etten to any share of the trust corpus. We agree with that conclusion and, in so doing, deny her any further relief. Our ruling is without prejudice to whatever disposition may be made in her equitable action which seeks to reform the corpus purchase agreement. Under the corpus purchase agreement as it now stands, any share which would have gone to Annie Laurine Dodge Van Etten was effectively transferred to the three surviving life tenants, Winifred, Isabella, and Frances, and was properly assigned to their estates in equal shares.

## Claim of Matilda R. Wilson Fund

The Matilda R. Wilson Fund (hereafter referred to as fund) claims that it is entitled to a one-eighth (12-1/2%) interest in the testator's estate by reason of the fact that Matilda Dodge Wilson was one of two heirs of her son, Daniel George Dodge, who died without issue in 1938.

The fund is the assignee of Matilda R. Dodge Wilson, the surviving spouse of John F. Dodge, who died in 1967. On August 11, 1922, two years after the testator's death, Matilda executed a written instrument wherein she elected to take against her husband's will. The applicable statutes in effect in 1922 provided:

"If any lands be devised to a woman, or other provision be made for her in the will of her husband, she

shall make her election whether she will take the lands so devised, or the provision so made, or whether she will be endowed of the lands of her husband, but she shall not be entitled to both, unless it plainly appears by the will to have been so intended by the testator." 1915 CL 11667.

"All dispositions of personal property by last will and testament shall be subject to the following limitations and restrictions:

"1. If the testator shall leave surviving him, a wife, the testamentary disposition shall be subject to the election of such wife, to take any interest that may be given to her, by the testator in his last will and testament; or in lieu thereof, to take the sum or share that would have passed to her, under the statute of distributions, had the testator died intestate, until the sum shall amount to five thousand dollars, and of the residue of the estate one-half the sum or share that would have passed to her under the statute of distributions, had the testator died intestate, * * *." 1915 CL 13805.

Inasmuch as the assets of the testator's estate consist mainly of personal property, we focus primarily on the statute regarding testamentary dispositions of personal property, 1915 CL 13805. We note that the language which furnishes a choice to the widow is: "to take any interest that may be given her, by the testator in his last will and testament; or in lieu thereof, to take the share that would have passed to her under the statute of distributions, had the testator died intestate".

The words "any interest" are comprehensive, appearing to include contingent remainder interests, such as the possibility of the widow receiving a portion of the trust corpus as an "heir" of one of the named income beneficiary children. As mother of two of the income beneficiaries named in the will, Frances Matilda Dodge (Van Lennep) and Daniel George Dodge, Matilda R. Dodge (Wilson)

had a remainder interest contingent upon whether either Frances or Daniel predeceased her.

Consequently, although the provision to which we refer did not mention Matilda by name, the will gave her a contingent remainder, a recognizable future interest in the personal property which constituted the corpus of the trust. However, we interpret the quoted 1915 statutory provisions to provide that when Matilda elected to take her statutory share instead of taking under the will, she took in lieu of "any interest", including a contingent future interest granted under the will.

In *Trumbull v Hale*,[29] the testator, during his lifetime, deeded the family home to his daughter. After his remarriage, the testator drafted a will in which he granted a life estate in the family home to his new wife, whereupon his daughter executed a life lease in the home to the second wife. Upon the testator's death, the deed and life lease were recorded. As a consequence of the widow electing to take her statutory share, rather than under the will, the daughter claimed that the widow lost all rights under the lease. In deciding in favor of the testator's daughter, the *Trumbull* Court held:

> "The only other question to consider is whether the life lease is good. Mr. Holmes' testimony is convincing that the sole purpose of executing the lease was to carry out the provisions of the will. *We are of the opinion that when defendant [widow] declined to take under the will, she lost all rights both under the will and under a lease,* the sole purpose of which was to make the will good." (Emphasis added.)[30]

Similarly, it has been stated that a spouse's election to take against the will causes the remain-

[29] 250 Mich 117; 229 NW 414 (1930).
[30] 250 Mich 121.

der of the estate to be distributed as if the electing spouse predeceased the testator.[31] In 97 CJS, Wills, § 1288b, pp 136-137,[32] the general rule regarding the effect of a widow's renunciation of her husband's will is stated as follows:

"Generally, the widow's renunciation of her husband's will precludes her from claiming or accepting any benefits thereunder, in any state, as discussed *supra* § 1238, forever; and the provisions made for her in the will lapse, or become immaterial, becoming, in effect, obliterated from the will, the property passing under the law of succession as though the testator had died leaving no wife where no other provision is made therefor in the will." (Footnotes omitted.)

Consistent with these authorities, we uphold the probate court's conclusion that Matilda R. Dodge's election to take under the statute operated as a renunciation of all benefits that she otherwise would have received under the will of John F. Dodge. Since the fund is the assignee of Matilda R. Dodge (Wilson), it acquired only the rights possessed by its assignor at the time of the assignment.[33]

However, the probate court did award to the fund a 1/128 share of the trust corpus, which award is in dispute. The fund, as assignee of Matilda R. Dodge (Wilson), received this share on the basis of the settlement agreement entered into in 1921 by Matilda and others with John Duval Dodge, who assigned any rights that he might have in the Dodge estate.[34] When Daniel George

[31] Atkinson, Law of Wills (2d ed), § 33, p 125.

[32] See, also, 80 Am Jur 2d, Wills, § 1651, pp 706-707.

[33] *Storey v Dutton,* 46 Mich 539; 9 NW 844 (1881); 3 Mich Law & Practice, Assignments, § 72, pp 49-50.

[34] "6. The first party [John Duval Dodge], * * * hereby sells, assigns, transfers, releases and relinquishes to the second parties any

Dodge died without issue in 1938, his heirs-at-law included his brother, John Duval Dodge, who died in 1942, because, as previously indicated in this opinion, the fact that Matilda elected to take against the will of her husband, John F. Dodge, operated to treat her (Matilda) as though she had predeceased her son (Daniel George Dodge). As a result of the assignment in the settlement agreement by John Duval Dodge of his rights in the John F. Dodge estate, Matilda R. Dodge (Wilson), among others, obtained vested rights in the portion of Daniel George Dodge's estate in which John Duval Dodge, as an heir, had an interest.

While, at first glance, it might appear that an inconsistency exists in the fund receiving part of the trust corpus, more careful examination of the record indicates otherwise and reveals that the award to the fund of a 1/128 share of the corpus was correct. Even though, by electing to take against the will, Matilda R. Dodge (Wilson) renounced "any interest" that she might otherwise have received under the will of John F. Dodge, which included, as we previously indicated, the right to take as an heir of Daniel George Dodge, her renunciation neither affects nor deprives her of her rights and benefits under the settlement agreement that she and others entered into with John Duval Dodge.

It is noteworthy that, in the settlement agreement entered into with John Duval Dodge, Matilda R. Dodge (Wilson) expressly reserved the right to elect against her husband's will. Additionally, she and the others approved payment to John Duval Dodge by the estate of $1,600,000, plus interest, in settlement, which sum reduced the

and all right, present or future, which first party has or may have, or claim to have, of, in or to the estate of said John F. Dodge, deceased, * * * ."

potential inheritance of Matilda and the others settling with him. The settlement agreement not only settled the will contest but also provided for assignment to Matilda and the other parties to the agreement of any contingent interest, present and future, that John Duval Dodge might have under the will. We, therefore, conclude that Matilda's renunciation of the will does not prevent the right of the Fund to take a 1/128 share of the corpus as an assignee of one of Daniel George Dodge's heirs.

### CLAIM OF RICHARD S. WILSON AND BARBARA WILSON ECCLES

Richard S. Wilson and Barbara Wilson Eccles were adopted in 1931 by Matilda R. Dodge Wilson and her second Husband, Alfred G. Wilson. Their claim rests upon their relationship to Daniel George Dodge, who died in 1938, they being a half-brother and half-sister of Daniel. Richard and Barbara purport to claim an interest in the corpus of the trust by virtue of the statute in effect in 1938, which provided:

"The residue, if any, of the personal estate shall be distributed as follows: * * * In case the deceased shall leave a widow and no children, or the issue of any deceased child surviving him, then such residue * * * shall be distributed, one-half [1/2] to such widow and the other half to the father and mother of the deceased, if living, in equal shares; if either parent be deceased, such share shall go to the survivor, and if both parents be deceased, such share shall be distributed equally to the brothers and sisters and the lineal descendants of any deceased brother or sister by right of representation." 1929 CL 15726.

We have already held that the Michigan law provides that heirs are determined as of the date

of death of the immediate ancestor, in this instance, the death of Daniel George Dodge in 1938. We agree with the probate court that these claimants, Richard S. Wilson and Barbara Wilson Eccles, make their claims under the law of 1938, that being the date of death of Daniel George Dodge, at which time the statute provided:

"The degrees of kindred shall be computed according to the rules of civil law; and kindred of the half blood shall inherit equally with those of the whole blood in the same degree, unless the inheritance comes to the intestate by descent, devise or gift of some one [1] of his ancestor * * *." 1929 CL 13444.

We agree with the probate court that the cited statute which was in effect in 1938 did clearly establish that kindred of the half blood were to inherit equally with those of the whole blood, except where "ancestral" property was involved. We also agree that ancestral property is not here involved. We are satisfied that the probate court was correct when it held that, in these circumstances, heirs of the half blood would inherit equally with heirs of the whole blood.

We also agree with the probate court that in 1938 the law then in effect provided that an adopted child was an heir-at-law of the adopting parents but that such an adopted person had no right to inherit from adoptive kindred.

In *In re Graham Estate*,[35] the decedent testator died in 1926, leaving a will executed in 1925, in which he created a trust for the benefit of his niece during her lifetime. The will provided that upon her death the trust would terminate and the corpus would be distributed "to her issue, by right of representation" and, if she were to die without

---

[35] 379 Mich 224; 150 NW2d 816 (1967).

issue surviving, a perpetual trust for the Salvation Army would be created. The niece died in 1963, leaving no issue born of her body surviving but leaving one adopted son born in 1926, after the death of the testator, and who was adopted in 1928. The Supreme Court indicated that the issue was what the testator intended with respect to whether an adopted child should be included within the meaning of the term "issue" in his will. The Supreme Court noted that the testator did *not* use the word "heir", or "child", but rather used the word "issue", and that, at the time of its use and execution of the will, the term issue did *not* include an adopted child. The *Graham* Court cited *Russell v Musson*[36] as holding that a testamentary provision for the child of another person does *not* include that person's adopted child, unless the will expresses a clear intent for his or her inclusion. The Supreme Court also referred to the 1957 amendment to the statute[37] which provided that thereafter the term "issue" would include an adopted child, but said:

"The intent of the testator must be held to have been what the words employed in his will meant at the time of his death. It was not competent for the legislature to change his will in that respect by statutory amendment adopted after his death."[38]

In *In re Dempster's Estate*,[39] the Supreme Court held that the personal property of an intestate is to be distributed "among those persons who were his heirs *at the time of his death*". Dempster died

[36] 240 Mich 631; 216 NW 428 (1927).
[37] MCL 710.9; MSA 27.3178(549).
[38] 379 Mich 228.
[39] 247 Mich 459, 464; 226 NW 243 (1929).

in 1918, and the question was who would receive his war risk insurance, his natural father or the heirs of his adopting parents. In 1923, the Legislature had passed an act providing that all personal property of an adopted child be distributed in the same manner as though such adopted child had been the natural child of its adopting parents. However, as indicated, Dempster had died in 1918. Consequently, the Supreme Court looked to his heirs in 1918 and declined to give effect to the 1923 statute.

In *Moritz v Wayne Circuit Judge*,[40] decedent died in 1936, leaving a brother and three nieces of a deceased brother. The deceased brother also had an adopted son. The issue had to do with whether the adopted son could inherit. The Supreme Court held that he could not because "in Michigan it has been established that one cannot adopt an heir for another person".

Richard S. Wilson and Barbara Wilson Eccles claim that the *Graham* decision is circumvented by MCL 700.128; MSA 27.5128, adopted in 1966 and still in effect, which provides:

"In the construction of a trust agreement or will, whether executed on, before, or after June 23, 1966, the term 'child', 'grandchild', 'issue', 'heir', 'descendant', 'beneficiary' or other equivalent term shall be construed to include any adopted person and his descendants whether natural or adopted unless a contrary intention appears by the terms of the instrument or unless the estate devised to the 'child', 'grandchild', 'issue', 'heir', 'descendant', 'beneficiary' or equivalent person vested before June 23, 1966, in an already ascertained person or persons who have an immediate indefeasible right of enjoyment or a present indefeasible fixed right of future enjoyment in the estate."

[40] 291 Mich 190, 194; 289 NW 126 (1939).

In its opinion, the probate court analyzed the statute as follows:

"Certainly the will contained no clear contrary intention in its terms, but it is equally clear that in 1938, at the time of Daniel's death, the interest of his 'heirs' in the estate of John F. Dodge vested. It has been argued by counsel that the entire estate of John F. Dodge did not vest within the meaning of the statute. This court cannot support this contention. The intent of the Legislature must have been foremost to protect persons who would have reason to rely upon their interest in an estate. The 'heirs' of Daniel Dodge were and are such persons. Their entitlement occurred in 1938 and it was then that they obtained a present indefeasible fixed right of future enjoyment in the estate, even though the specific holders of the remaining interests were still undetermined."

We agree with the probate court and decline to hold that the changed public policy which has now become part of the Revised Probate Code prevents the interpretation that we here place upon John F. Dodge's will. In so holding, we realize that the statute, MCL 700.128; MSA 27.5128, provides by its terms that it is retroactive to wills executed before its enactment. We do not, however, agree with the claim of Richard S. Wilson and Barbara Wilson Eccles that none of the stated exceptions to retroactivity apply. On the contrary, we believe that, upon the death of Daniel in 1938, an indefeasible fixed right of future enjoyment in his share of the John F. Dodge trust corpus vested in Daniel's heirs, determined as of that date in 1938 under the statutes of distribution then in effect. We believe that the term "estate" as used in the foregoing statute (MCL 700.128; MSA 27.5128) refers to specific interests in property conveyed by the will and not to all of the residual property of

the deceased.[41] MCL 700.128 uses the phrase "estate devised to the * * * heir", thus clearly referring to a specific interest in property and not to all of the property of the deceased.

In view of this, we believe that specific interests in property, such as vested remainders, are protected under the statute. These remainder interests in the trust corpus "vested" in the heirs of each of the four children named in the will at the time of his or her death. Thus, the remainder interests in the shares allocated to Daniel's heirs vested in 1938, while the last remainders to vest were those of Winifred's heirs in 1980. Further, the remainder interests of Daniel's heirs vested in 1938 and, thus, his heirs received at that time "an indefeasible right to future enjoyment" of their share of the trust corpus. This all took place 28 years before the enactment of MCL 700.128; MSA 27.5128.

Contrary to the position of Richard S. Wilson and Barbara Wilson Eccles, we interpret the statute to mean that a person must have either an immediate right of enjoyment *or* an indefeasible right of future enjoyment in order to avoid the retroactive effect of the statute.

Since, by her exercise of her widow's election, Matilda R. Dodge (Wilson) was disqualified and legally treated as though she predeceased her son, Daniel George Dodge, the heirs of Daniel Dodge under the applicable statute of distribution were his widow, Annie Laurine Dodge, his three sisters, Winifred, Isabella, and Frances, and his brother, John Duval Dodge.

Under the adoption statute then in effect, Daniel's adoptive siblings, Richard S. Wilson and Bar-

---

[41] See *In re Estate of Reynolds,* 274 Mich 354, 362; 264 NW 399 (1936).

bara Wilson Eccles, were excluded. 1929 CL 15955. In 1940, Annie Laurine Dodge (Van Etten) agreed to sell all of her interest in the trust corpus to Daniel's natural surviving siblings, Isabella, Frances, and Winifred. Neither Richard S. Wilson nor Barbara Wilson Eccles was a party to that agreement, nor was either involved in the negotiations or the signing of the agreement, nor did either pay any part of the consideration for Annie Laurine Dodge's vested remainder interest in the trust corpus. The entire $1,250,000 of consideration for her share was paid by Winifred, Isabella, and Frances.

We are inclined to conclude that, under the applicable statutes of distribution, Annie Laurine Dodge had as Daniel's heir a vested remainder interest in the trust corpus, that she transferred and sold her entire interest in the trust corpus to Daniel's natural siblings, Winifred, Isabella, and Frances, but not to his adoptive siblings, Richard and Barbara, and that, under these circumstances, the finding of the probate court that Richard S. Wilson and Barbara Wilson Eccles were not heirs of Daniel George Dodge was and is correct.

Last, the fact that the vested remainders in the trust corpus reserved for Daniel's heirs were vested interests in property entitles them to such protection as to preclude application of the Adoption Code's mandate that "there shall not be any distinction between the rights of natural progeny and adopted persons".[42]

The exceptions to retroactivity reflect the recognition by the Legislature of the fundamental principle that property interests may not be taken without just compensation or due process. These vested and, therefore, protected remainder inter-

[42] MCL 710.60(2); MSA 27.3178(555.60)(2).

ests were relied upon by Winifred, Isabella, and Frances when they entered into the corpus purchase agreement in 1940 with Daniel's widow, Annie Laurine Dodge, to purchase that interest. Consequently, we affirm the denial by the probate court of the claim of Richard S. Wilson and Barbara Wilson Eccles.

### CLAIM OF THE ESTATE OF JOHN DUVAL DODGE

The probate court held that "the estate of John Duval Dodge and all those persons claiming through the estate have no claim to the corpus, and that whatever share was to go to him has been assigned in equal shares to the recipients under the settlement agreement". We see no reason to disturb this conclusion.

As a general proposition, disinheritance does not result except by express devise or necessary implication regarding disposition of the property in question.[43] In the within case, the testator simply did *not* say that in all events he desired to exclude his son John Duval Dodge from the possibility of taking trust corpus on termination of the trust.

However, John Duval Dodge received $1,600,000, plus substantial interest, to settle his claims against his father's estate. As part of that 1921 settlement, he transferred and assigned to Matilda R. Dodge (Wilson), Winifred Dodge Gray (Seyburn), Isabella Cleves Dodge (Sloane), Frances Matilda Dodge (Van Lennep), and Daniel George Dodge all of his rights, present or future, to his father's estate. As indicated, the validity of the settlement

---

[43] *In re Brown Estate,* 362 Mich 47; 106 NW2d 535; 100 ALR2d 322 (1960); *Cattell v Evans,* 301 Mich 708; 4 NW2d 67 (1942); *Southgate v Karp,* 154 Mich 697; 118 NW 600 (1908).

agreement was affirmed in *Dodge v Detroit Trust Co, supra.*

### CLAIM OF MARY ANN DODGE DANAHER

As previously indicated, Isabella Cleves Dodge (Sloane), a daughter of the testator, John F. Dodge, died March 9, 1962, while a resident of the State of Florida, without surviving spouse, issue, or parents. For the reasons previously set forth, we hold that her heirs must be determined under 1962 Michigan law. The statute of distribution in effect in Michigan at the time of Isabella's death provided that, in such case, the brothers and sisters of the decedent and the children of deceased brothers and sisters "and if such persons are in the same degree of kinship to the deceased" would take equally and, if not, by right of representation.[44]

Isabella was survived by her two sisters, Winifred and Frances, and by Mary Ann Danaher, daughter of her deceased brother, John Duval Dodge. As previously indicated, we do not find that the will of John F. Dodge expressed an intention to disinherit the children, issue, or heirs of John Duval Dodge.

We agree with the probate court that by virtue of the 1921 settlement agreement, Mary Ann Dodge Danaher has no claim to trust corpus through her father's estate. This does not mean that in her own right she is disqualified from inheriting as an heir of her aunt, Isabella Cleves Dodge (Sloane).

In *In re Wagar's Estate,*[45] the Supreme Court

---

[44] 1948 CL 702.93.
[45] 302 Mich 243; 4 NW2d 535 (1942).

held that, where a will left a share to a grandchild and where the will had been previously construed by the Supreme Court to mean that if the grandchild predeceased the testator then the share which the grandchild would have taken if he had survived the testator would pass to the heirs-at-law of the grandchild as determined upon the death of the last surviving beneficiary under the will, then a half-brother of the predeceasing grandchild would receive a portion of that predeceasing grandchild's share even though the half-brother was not related in the bloodline to the testator. *Wagar* indicates that a distinction may be made between taking property through one's parent and taking property directly as an heir of someone other than one's parent.

Applied to the within case, *Wagar* would appear to mean that Mary Ann Dodge Danaher may take as an heir of Isabella, even though precluded from taking through her father, John Duval Dodge. In *Wagar,* the half-brother could *not* have inherited from the grandson any *ancestral* property which the grandson would otherwise have received from the testator.

In the within case, Mary Ann Dodge Danaher claims a share in the trust corpus as an heir of Isabella Cleves Dodge (Sloane) within the meaning of her grandfather's will, that is, an interest separate and independent from that of her father, John Duval Dodge. The issue of ancestors who may have been disinherited by the terms of a testator's will are *not* impliedly divested of their own independent rights under the will.

In general, the law is that the parties to a settlement agreement are prohibited from utterly

extinguishing a contingent future interest under a will unless the interest is insubstantial.[46] It was always obvious, even in 1921, that the unborn, unnamed, and unascertained possible future beneficiaries might inherit extremely large bequests.

Additionally, in the 1921 settlement agreement and chancery decree, the guardian ad litem of the various unascertained, unknown, and unborn prospective heirs did not purport to assign or release rights such as that now asserted by Mary Ann Dodge Danaher. We are satisfied that the probate court was correct in awarding Mary Ann Dodge Danaher a proportionate share of the trust corpus as an heir of Isabella Cleves Dodge (Sloane).

Since the issue of sequestration is not raised on appeal, we consider that it is abandoned. If it had been raised, it would not have any merit under our denial of the claim of Annie Laurine Dodge Van Etten.

Consistent with this opinion, we approve the probate court's conclusion regarding disposition of the trust corpus, the cited fractions representing the fractional interests of the total trust corpus as follows:

1. The "heirs" of Daniel George Dodge (entitled to one-quarter of the trust corpus).

a. Annie Laurine Dodge (Van Etten), the surviving spouse, assigned her one-half share equally to:

Winifred Dodge Gray (Seyburn) . . . . . . . . . . . 1/24
Isabella Cleves Dodge (Sloane) . . . . . . . . . . . 1/24

---

[46] *Hay v LeBus,* 317 Mich 698; 27 NW2d 309 (1947).

Frances Matilda Dodge (Van Lennep) . . . . . 1/24

b. The surviving brothers and sisters each shared the remaining half equally as follows:

Winifred Dodge Gray (Seyburn) . . . . . . . . . . . 1/32
Isabella Cleves Dodge (Sloane) . . . . . . . . . . . . 1/32
Frances Matilda Dodge (Van Lennep) . . . . . 1/32
(John Duval Dodge) . . . . . . . . . . . . . . . . . . . . (1/32)

c. However, the one-thirty-second share which was to go to John Duval Dodge was assigned by him to the following:

Matilda R. Dodge Wilson Fund . . . . . . . . . . 1/128
Winifred Dodge Gray (Seyburn) . . . . . . . . . . 1/128
Isabella Cleves Dodge (Sloane) . . . . . . . . . . . 1/128
Frances Matilda Dodge (Van Lennep) . . . . 1/128

2. The "heirs" of Isabella Cleves Dodge Sloane (entitled to one-quarter of the trust corpus).

a. The surviving sisters and child of deceased brother, entitled to share equally by right of representation are:

Winifred Dodge Gray (Seyburn) . . . . . . . . . . . 1/12

Frances Matilda Dodge (Van Lennep) . . . . . 1/12

Mary Ann Dodge Danaher (daughter of John Duval Dodge) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1/12

3. The "heirs" of Frances Matilda Dodge Van Lennep (entitled to one-quarter of the trust corpus).

a. The surviving spouse entitled to a one-third share is:

Frederick L. Van Lennep................. 1/12

b. The surviving issue entitled to share equally in the remaining two-thirds are:

Judith Johnson McClung ................. 1/18
Fredericka Van Lennep Caldwell ......... 1/18
John F. Van Lennep ..................... 1/18

4. The "heirs" of Winifred Dodge Gray Seyburn (entitled to one-quarter of the trust corpus).

a. The surviving issue entitled to share equally are:

Winifred Seyburn Cheston................ 1/16

Suzanne Seyburn Meyer.................. 1/16

Edith Seyburn Quintana ................. 1/16

Isabel Seyburn Harte ................... 1/16
Affirmed.